Mona R. Conway, Esq. (MC-4673)
CONWAY BUSINESS LAW GROUP, P.C.
*Attorneys for Plaintiff*
33 Walt Whitman Road
Suite 310
Huntington Station, N.Y. 11746
(631) 424-0999

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ARIEL FLEURIMOND,

                Plaintiff,                             CV 09-3739 (ADS) (AKT)

      -against-

NEW YORK UNIVERSITY,

                Defendant.

-------------------------------------------------------------------X

# PLAINTIFF' S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I. DEFENDANT'S ARGUMENTS CONCERNING THE RELEVANCE OF
CERTAIN EVIDENCE PRESENTED IN THIS CASE ARE FACTUALLY
INACCURATE AND LEGALLY UNSUPPORTED ………………………………   5


II. DEFENDANT HAS NOT ADEQUATELY REBUTTED PLAINTIFF'S
COPYRIGHT REGISTRATION …………………………………………………..   8

III. DEFENDANT CANNOT PROVE ITS "WORK-MADE-FOR-HIRE"
DEFENSE ………………………………………………………………...…..   9

IV. THE COPYRIGHT ACT CLEARLY PERMITS PLAINTIFF TO
RECOVER STATUTORY DAMAGES AND ATTORNEY'S FEES IN THIS
ACTION …………………………..…………………………………………..   18

V. CONCLUSION ……………………………………………………...……..   18

# TABLE OF AUTHORITIES

Federal Cases

*Aymes v. Bonelli*, 980 F.2d 857 (2d Cir. 1992) ………………………………………… 12, 14, 15, 16, 17

*Auscape Int'l v. Nat. Geographic Soc'y*, 409 F. Supp. 2d 235 (S.D.N.Y. 2004) ……. 6

*Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) ……………… *passim*

*Cramer v Crestar Fin. Corp.*, 38 U.S.P.Q.2d 1684 (4th Cir. 1995) ………………… 7

*Deshpande v. Medisys Health Network, Inc.*, 07-cv-375 (E.D.N.Y. 2010) …………. 10

*Dister v. Continental Group, Inc.*, 859 F.2d 1108 (2d Cir. 1988) …………………… 7

*Durham Industries, Inc. v. Tomy Corp.*, 630 F. 2d 905 (2d Cir. 1980) …………….... 8

*Eisenberg v. Advance Relocation & Storage, Inc.* 237 F.3d 111 (2d Cir. 2000) ……. 10

*Folio Impressions, Inc. v. Byer California*, 937 F.2d 759 (2d Cir. 1991)  …………... 8

*Gallo v. Prudential Residential Servs, Ltd.*, 22 F.3d 1219 (2d Cir. 1994) ………….… 17

*Graham v. James*, 144 F.3d 229 (2d Cir. 1998) ……………………………………... 17

*Island Software & Computer v. Microsoft*, 413 F.3d 257 (2d Cir. 2005) ………….… 8

*Langman Fabrics v. Graff Californiawear, Inc.*, 160 F.3d 106 (2d Cir. 1998) ……… 8

*Martin Deli v. Schumacher*, 52 N.Y. 2d 105 (1981) ………………………………… 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) …………… 17

*Medforms, Inc. v. Healthcare Management*, 290 F.3d 98 (2d Cir. 2002) …………… 9

*Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090  (2d Cir. 1977) …... 8

*Pavlica v. Behr*, 397 F. Supp.2d 519 (S.D.N.Y. 2005) ……………………………… 9

*Playboy Enterprises, Inc. v. Dumas*, 831 F. Supp. 295 (S.D.N.Y. 1993) …………… 6

*Price v. Fox Entertainment Group, Inc.*, 473 F. Supp.2d 446 (S.D.N.Y. 2007) ……. 17

*Repp v. Webber*, 132 F.3d 882 (2d Cir. 1997)  ……………………………………… 7

*Roginsky v. County of Suffolk*, 09-cv-1160 (E.D.N.Y. 2010) ………………………   10

*Salamon v. Our Lady of Victory Hospital* 514 F.3d 217 (2d Cir. 2008) ……………   11, 17

*Samara Brothers, Inc. v. Wal-Mart Stores, Inc.*, 165 F.3d 120 (2d Cir. 1998) ……...   8

*Sapon v. DC Comics*, 2002 U.S. Dist. LEXIS 5395 (S.D.N.Y. 2002) ………………   7

*Scotto v. Almenas*, 143 F.3d 105 (2d Cir. 1998) ……………………………………   9

*Shade v. Housing Auth. of the City of New Haven*, 251 F.3d 307 (2d Cir. 2001) …….   7

*Shaul v. Cherry Valley-Springfield Central School Dist.*, 363 F.3d 177 (2d Cir. 2003) .   9

*SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp.2d 301 (S.D.N.Y. 2000) …….   8, 12, 15, 16

*Siegel v. Time Warner Inc.*, 496 F. Supp.2d 1111 (C.D. Cal. 2007) …………………   6, 13

*Sowemimo v. D.A.O.R. Sec., Inc.*, 43 F. Supp. 2d 477 (S.D.N.Y. 1999) ………………   10

*ULLOA v. Universal Music & Video Distribution Corp.*, 01-cv-9583 (S.D.N.Y. 2004) .   12, 13, 14

*Valdez v. Laffey Assocs.*, 2010 U.S. Dist. LEXIS 30160 (E.D.N.Y. 2010) …………….   8

Plaintiff, Ariel Fleurimond submits this Memorandum of Law in Opposition to Defendant, New York University's Motion for Summary Judgment.  Plaintiff respectfully requests an Order denying Defendant's Motion for Summary Judgment and granting summary judgment in Plaintiff's favor.

## I.   DEFENDANT'S ARGUMENTS CONCERNING THE RELEVANCE OF CERTAIN EVIDENCE PRESENTED IN THIS CASE ARE FACTUALLY INACCURATE AND LEGALLY UNSUPPORTED

Defendant's Memorandum of Law in Support of New York University's (NYU) Motion for Summary Judgment proposes that three specific items of evidence are legally irrelevant: "incomplete invoices"; "the alleged napkin sketch"; and "the alleged oral agreement" between the parties.  *See* Def's Mem., pp 7-11.  Defendant's interpretation of this evidence is self-servingly inaccurate and utterly unsupported by apposite legal authority.

Defendant attempts to prove irrelevant the fact that Plaintiff did not submit invoices for the time she spent in creating the subject Work.  Defendant reasons that because Plaintiff did not alert NYU to the fact that the invoices she submitted for her graphic design work did not include the time she spent in creating the subject Work, Plaintiff's testimony that she did not submit invoices for the subject Work is, therefore, irrelevant.  This reasoning is not only specious, but such "legal analysis" is not supported by law.

It is undisputed that Fleurimond submitted invoices to NYU for her work as a graphic designer.  This was clearly understood by the parties and there is no dispute with respect to this issue of fact or the fact that Fleurimond was compensated for graphic design work.  The relevant issue, and the only issue which Defendant raises, is whether or not Fleurimond submitted invoices for her work in creating the subject Work.  NYU claims that Fleurimond was paid for

the subject Work upon submission of invoices.  *See, e.g.,* Def's Mem., p 13 ("… plaintiff submitted her hours to NYU and was paid for this work … at a rate of $16.00 per hour … for the bobcat project"); *see also* Def's Mem., p 18 ("Plaintiff clearly got paid for her work on the so-called Orion bobcat project from the beginning, and in fact she herself prepared and issued time sheets to NYU …").  If it is proved that Fleurimond was paid for that work within the scope of her employment at NYU, then NYU's work-for-hire defense would preclude liability in this action.  Plaintiff contends that this is a highly relevant issue of fact to be considered by this Court in determining Defendant's liability.  *See Siegel v. Time Warner Inc.*, 496 F. Supp.2d 1111, 1139 (C.D. Cal. 2007); *see also Playboy Enterprises, Inc. v. Dumas*, 831 F. Supp. 295, 310 (S.D.N.Y. 1993) (finding the "course of conduct" between the parties relevant to the employer/employee relationship inquiry).

Fleurimond performed several jobs simultaneously for NYU during the subject time period.  The fact that Fleurimond did not state to NYU – while submitting her graphic design invoices – that the hours she recorded were not for other work she performed for NYU, such as for NYU's College of Dentistry or for her work as an Equipment Room Aide, does not demand attention for argument.  This is a desperate ruse by Defendant.  The only authority cited by Defendant to rationalize Defendant's conclusion of irrelevance was addressed to intent in a contract context and not at all applicable to this issue.  *See Auscape Int'l v. Nat. Geographic Soc'y*, 409 F. Supp. 2d 235, 240 (S.D.N.Y. 2004).

As for Defendant's "Napkin Sketch" argument, it is inexplicable why Defendant raises such an issue on its Motion.  Plaintiff merely testified as to how the basic form of the subject Work was originally put in tangible form.  Defendant made this issue relevant by questioning Plaintiff about it during her deposition.  In addition, Defendant attempts to deceive this Court by

asserting that Plaintiff concedes that "she and other NYU employees modified the work" originally created on a napkin.  *See* Def's Mem., p 9.  Fleurimond conceded no such thing.  *See* Fleurimond Dec. at ¶ 40.

The Work at issue is undisputed; it is the Work that Plaintiff registered with the Copyright Office in May of 2008 and which has been used by NYU since that time.  Defendant's sole case citation in support of this non-argument (*Cramer v Crestar Fin. Corp.*, 38 U.S.P.Q.2d 1684 [4th Cir. 1995]) is both non-authoritative and moot.

With respect to Defendant's argument that an alleged oral agreement between the parties is irrelevant, again Plaintiff contends that whether or not the parties had an oral agreement regarding compensation for the Work is highly relevant.  "Materiality is determined by the governing substantive law, in this case the Copyright Act."  *Sapon v. DC Comics*, 2002 U.S. Dist. LEXIS 5395, *11-12 (S.D.N.Y. 2002); *citing Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) and *Repp v. Webber*, 132 F.3d 882, 890 (2d Cir. 1997).  Any issue of fact in this case is considered material if the Court determines that "it might affect the outcome of the suit under the governing law."  *Shade v. Housing Auth. of the City of New Haven*, 251 F.3d 307, 314 (2d Cir. 2001).

Defendant's attempt to convolute the work-for-hire argument with an issue of the relevance of evidence should not be entertained by this Court.  Defendant's sole authority on this point is, once again, inapposite and non-authoritative.  *See Martin Deli v. Schumacher*, 52 NY 2d 105 (1981) (landlord/tenant dispute of lease terms).

## II.  DEFENDANT HAS NOT ADEQUATELY REBUTTED PLAINTIFF'S COPYRIGHT REGISTRATION

In its Motion for Summary Judgment, Defendant argues that it has overcome the statutory presumption of the validity of Plaintiff's copyright registration by "overwhelming evidence." *See SHL Imaging, Inc.*, 117 F. Supp.2d at 305, *citing Langman Fabrics v. Graff Californiawear, Inc.,* 160 F.3d 106, 111 (2d Cir. 1998) (noting that the statutory presumption orders the burden of proof and is rebuttable).  Without making a cogent argument or citing to precedent on point, Defendant repeats the phrase "overwhelming evidence" in the hopes that the Court might overlook the lack of such evidence.

Fleurimond registered the Work with the Copyright Office in May of 2008.  *See* Fleurimond Dec., ¶ 41.  Fleurimond's Certificate of Registration constitutes *prima facie* evidence of her ownership of the Work (*see* Fleurimond Dec., ¶ 41).  *See Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980) (stating that Copyright Office certificate of registration "if timely obtained, constitutes prima facie evidence of the validity of the copyright and of the facts stated in the certificate."); *see also Novelty Textile Mills, Inc.*, 558 F.2d at 1092 n.1 ) (stating that certificate of registration is prima facie proof of ownership and validity of copyright), *citing* 2 M. Nimmer on Copyright § 141.1 at 611 (1976); *see also Island Software*, 413 F.3d at 261 (stating that taking judicial notice of validity of registrations as published in the Copyright Office's registry is proper).

NYU has submitted no proof to rebut the presumption of Fleurimond's ownership.  *See Samara Brothers, Inc. v. Wal-Mart Stores, Inc*., 165 F.3d 120, 132 (2d Cir. 1998) (presumption of validity of plaintiff's copyright registration was not overcome by defendants, as no proof was adduced to challenge the fact that the Work was "independently created by its author"), *citing Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 763 (2d Cir. 1991); *see also Valdez v.*

*Laffey Assocs.*, 2010 U.S. Dist. LEXIS 30160, *10 (E.D.N.Y. 2010) (finding that plaintiff had proven ownership of a valid copyright on summary judgment, as defendants presented no evidence contesting the validity of plaintiff's copyright registration); *see also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (stating that the non-moving party on a motion for summary judgment "may not rely on conclusory allegations or unsubstantiated speculation").

## III.   DEFENDANT CANNOT PROVE ITS "WORK-MADE-FOR-HIRE" DEFENSE

In its Motion for Summary Judgment, NYU attempts to confuse the Court by reiterating the mere fact that Fleurimond was an employee of NYU during the time she created the work. This fact has never been a source of dispute.

Critically, however, NYU cannot show that the Work was created within the scope of Fleurimond's employment at NYU.  *See Pavlica v. Behr*, 397 F. Supp.2d 519, 525 (S.D.N.Y. 2005) (stating, in a "work-for-hire" context, "the work created by an employee must fall within the scope of his employment") *citing* 17 U.S.C. § 201(b) and *Shaul v. Cherry Valley-Springfield Central School Dist.*, 363 F.3d 177, 186 (2d Cir. 2003).  Although Defendant again promises "overwhelming evidence" to support its contention, its Motion proves sorely lacking in that respect.

It is Defendant's burden to prove that the Work was one "made for hire"; in order to do so,  NYU must establish that the work was prepared by Fleurimond within the scope of her employment at NYU.  *See Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 738 (1989); *see also* e.g*., Medforms, Inc. v. Healthcare Management*, 290 F.3d 98, 115 (2d Cir. 2002) (categorizing "work-for-hire" doctrine as affirmative defense).  "Courts in this circuit look beyond mere labels in assessing whether a defendant is an employer, and apply the common law of agency to determine whether an individual is an independent contractor or an employee …."

9

*Deshpande v. Medisys Health Network, Inc.*, 07-cv-375, p. 26 (E.D.N.Y. 4-16-2010); *citing Sowemimo*, 43 F. Supp. 2d at 489 and *Reid*, 490 U.S. at 751 (*internal quotations omitted*).

Although Defendant failed to apply general common law agency principles to the demonstrated facts of this case, Plaintiff has done so to show that Fleurimond created the Work as an independent contractor and not as an employee of NYU. *See Reid*, 490 U.S. at 731 (holding that a determination by the Court of whether a work is a "work made for hire" within the definition of the copyright statute should be made by first apply general common law of agency). Application of the thirteen, non-exhaustive factors promulgated by *Reid* supports Fleurimond's position that the Work was not one made-for-hire. *See Reid*, 490 U.S. at 751-52. The *Reid* factors to be considered in a "work-for-hire" analysis clearly weigh in Fleurimond's favor. NYU cannot establish that the following factors constitute an employer/employee relationship with respect to the Work.

Whether NYU retained a right to control the manner and means of creation of the Work (*see Reid*, 490 U.S. at 751) should be regarded with "great emphasis" in the work-for-hire analysis. *See Eisenberg v. Advance Relocation & Storage, Inc.* 237 F.3d 111, 114 (2d Cir. 2000) (stating that although no single factor is dispositive, "the greatest emphasis should be placed on the first factor - that is, on the extent to which the hiring party controls the 'manner and means' by which the worker completes his or her assigned tasks"); *accord Roginsky v. County of Suffolk*, 09-cv-1160, p. 10 (E.D.N.Y. 2010).

NYU did not and could not have a right to control the manner and means of creation of the Work by Fleurimond. *See* Fleurimond Dec. ¶¶ 34-36. While employed by NYU in an entirely non-artistic capacity, Fleurimond was instructed by NYU that she would be given an opportunity to create NYU's new Athletic Department mascot; Fleurimond was further informed

that her Work might not be chosen by NYU.  *See* Fleurimond Dec. ¶¶ 26-31.  Fleurimond

created the Work at home, using her own tools and skills (*See* Fleurimond Dec. ¶ 35).  *See Reid*,

490 U.S. at 752-53 (in holding no work-for-hire relationship, the Court found that the artist

supplied his own tools, worked from his home and had freedom to decide when and how long to

work).  Fleurimond never submitted reports to NYU of her progress with respect to the Work nor

did she keep track of time or progress in any tangible form.  *See* Fleurimond Dec. ¶¶ 35-36.  She

could have abandoned the project or continued with it at her sole discretion; there would have

been no consequence to her failure to produce the Work for NYU.  *See* Fleurimond Dec. ¶¶ 31-

33.

NYU has not presented any evidence which suggests that NYU had a right to control the

manner and means of creation of the Work by Fleurimond.  *See Salamon v. Our Lady of Victory

Hospital* 514 F.3d 217, 228 (2d Cir. 2008) (criticizing the district court's application of *Reid* as

overemphasizing the role of professional judgment, "contrasting it to control over the manner

and means of one's work in the common law agency test").  NYU's FRCP 30 (b) (6) witness,

Frank Sicignano, had virtually no knowledge regarding the creation of the Work.  *See* Sicignano

Dep., trans. pp. 11, 145, 147-53.  Mr. Sicignano's testimony with respect to the creation of the

Work was extremely limited.  *See Id.*  Mr. Sicignano did not know how the Work was created

(*see* Sicignano Dep., trans. pp. 147-50) or even why it was created (*see* Sicignano Dep., trans. p.

145).

NYU attempts to muddy the distinction between Fleurimond's work for NYU as a

computer graphic designer (for which work she was compensated) and her creation of the

original Work as an artist.  *See* Def. Mem., p 20, Docket # 12, pp. 11-12; Docket #6, ¶¶ 19, 21,

29.  NYU's claim that it had a right to control the manner and means of creation of the Work,

11

without any evidentiary support, is "unavailing." *See SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp.2d 301, 314 (S.D.N.Y. 2000) (stating that defendants' argument that plaintiff was a work-for-hire employee because plaintiff was given "explicit instructions and worked under the supervision of the defendants, at their premises, photographing their property and paid [plaintiff's] expenses is unavailing").

The skill required by Fleurimond in creating the Work (*see Reid*, 490 U.S. at 751) undoubtedly favors Fleurimond. *See Ulloa v. Universal Music & Video Distribution Corp.*, 01-cv-9583, *11 (S.D.N.Y. 2004). Fleurimond was and is a skilled artist. (*See, e.g.,* LeFevre Dep., trans. p. 128). Defendant has presented no evidence to the contrary. When courts address the level of skill required to determine a party's independent contractor status, the key inquiry centers on the skill needed to perform the task. *See Aymes v. Bonelli*, 980 F.2d 857, 862 (2d Cir. 1992) (rejecting the district court's finding that a computer programmer did not possess skills beyond that of a layman).

The skills required by Fleurimond were such that no other employee of the University was hired to create the Athletic Department's official mascot. (*See* LeFevre Dep. at 128, 133). Fleurimond was clearly a "skilled craftsman." *Aymes*, 980 F.2d at 862 (finding computer programmer, hired party to be a "skilled craftsman"). NYU has not denied that this factor in the work-for-hire analysis – the skill required to perform the Work (*see Reid*, 490 U.S. at 752) – weighs in Fleurimond's favor. *See* Docket # 12 (stating that "all but one" of the *Ames* factors weighs in NYU's favor).

In its Motion, NYU does not attempt to claim that it provided Fleurimond with employee benefits within the meaning of the *Reid* standard. *See Reid*, 490 U.S. at 752; *see also Aymes*, 980 F.2d at 861 (the provision of employee benefits by the hiring party is a factor of consideration in

determining employment status). Fleurimond received no benefits of any kind for creating the Work. *See* Fleurimond Dec. ¶¶ 72-73. "Therefore, the third factor weighs against finding an employment relationship." *See Ulloa v. Universal Music & Video Distribution Corp.*, 01-cv-9583, *11 (S.D.N.Y. 2004).

The fourth factor (*see Reid*, 490 U.S. at 752), the tax treatment of the hired party, has been ignored in NYU's Motion to persuade for a work-for-hire defense. The undisputed facts demonstrate that Fleurimond was never treated as a W-2 employee by NYU for purposes of her performance as creator of the Work. Fleurimond has asserted, since before the instant suit began, that she was never paid for the Work that she created. *See* Fleurimond Dec., ¶ 72-79; Exh. 7. To dispute this fact, NYU produced a single witness to testify as to the tax treatment of Fleurimond while employed at NYU. This witness, Mr. Sicignano, was unable to discern whether Fleurimond was ever paid by NYU for her creation of the Work and could not know by virtue of W-2 forms precisely what Fleurimond was paid to do at NYU. *See* Sicignano Dep. Trans. pp. 93-96.

Again, it is noted that it was understood by Fleurimond that NYU would only pay for the Work if it were used by NYU. *See* Fleurimond Dec., ¶¶ 32, 74-79. The failure of NYU to pay for unused work, which fell outside of Fleurimond's regular job duties, supports the conclusion that there was no for-hire relationship with respect to the subject Work. *See* Siegel, 496 F. Supp.2d at 1142. Fleurimond, like the artist/respondent in *Reid*, was engaged in a skilled occupation; supplied her own tools; worked at home without supervision from Defendant; was retained for a relatively short period of time; and had absolute freedom to decide when and how long to work in order to meet her deadline. *See* 490 U.S at 752-53. Plaintiff was not an employee of NYU for the purpose of creating NYU's new mascot. *See Id*. at 752 (holding that

13

respondent was not an employee of petitioner after applying a non-exhaustive list of factors to determine whether a hired person is an employee).

Whether NYU had the right to assign additional projects to Fleurimond (*see Reid*, 490 U.S. at 751) is another factor which weighs decidedly in Fleurimond's favor.  Defendant's Motion ignores this part of the work-for-hire analysis.

Since Fleurimond was employed by NYU as an athletic room attendant, NYU did not have the right to assign artistic projects to Fleurimond.  NYU could have requested additional artistic work from Fleurimond, but she certainly could not have been fired for cause or otherwise reprimanded in her job for failure to create additional works of art.  It is an undisputed fact that the mascot project was a one-time endeavor.  "Independent contractors are typically hired only for particular projects."  *Aymes*, 980 F.2d at 863.  In fact, there were no other artistic projects to "assign" to Fleurimond.  *See Ulloa v. Universal Music & Video Distribution Corp.*, 01-cv-9583, *13 (S.D.N.Y. 2004) (copyright creator was a one-time studio guest; defendants did not have the right to assign other projects).  NYU cannot show that it had a right to assign additional projects to Fleurimond.

Although these factors "should not merely be tallied but should be weighed according to their significance in the case," it is important to note the that five factors discussed above: (1) the hiring party's right to control the manner and means of creation; (2) the skill required; (3) the provision of employee benefits; (4) the tax treatment of the hired party; and (5) whether the hiring party has the right to assign additional projects to the hired party are considered almost always relevant by the Second Circuit.  *Aymes*, 980 F.2d at 861.

To continue the inquiry under the remaining eight *Reid* factors (*see Reid*, 490 U.S. at 751-52), certain factors are particularly significant as applied to the instant case.  The findings in

*SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp.2d 301, 314 (S.D.N.Y. 2000) provide an outline of the relevant facts of this case.  The *SHL Imaging* Court found that "[t]he source of the instrumentalities and tools factor is significant because the choice of equipment played a vital role that affected the aesthetic appearance of the photographs."  *Id.*; *see also Reid*, 490 U.S. at 751) (the source of the instrumentalities and tools use in the creation of the subject work is one of 13 factors to be considered by the Court in a work-for-hire analysis).  Similarly, Fleurimond used her own instrumentalities and tools to create the subject Work.  *See* Fleurimond Dec. ¶¶ 34-36.  NYU cannot demonstrate otherwise.

"The duration of the relationship between the parties also informs the analysis. In contrast to a typical employee, plaintiff was hired by defendants for the specific photo shoot in question." *SHL Imaging, Inc.*, 117 F. Supp.2d at 314.  Here, too, the time during which Fleurimond was employed by NYU was, by its nature, short-lived.  Fleurimond was hired part-time as an equipment room attendant under a Federal Work Study program during her second-to-last year of study at NYU.  Fleurimond had only been employed by NYU from 2007 to 2008.  *See* Fleurimond Dec. ¶¶ 10-11.  NYU does not dispute this fact.  "Defendants did not exercise any control over when and how long plaintiff would work."  *Id.*  Fleurimond worked on her own time.  *See* Fleurimond Dec. ¶¶ 34-36.  NYU cannot show that Fleurimond created the Work within any time constraints controlled by NYU.

"The factors relating to the authority to hire assistants will not normally be relevant if the very nature of the work requires the hired party to work alone. In such a case, that factor should be accorded no weight in applying the *Reid* test."  *Aymes*, 980 F.2d at 861 (stating that "having the authority to hire assistants, however, might have great probative value where the individual claiming to be an independent contractor does exercise authority to enlist assistants without prior

approval of the party that hired him. In the latter case, this show of authority would be highly indicative that the hired party was acting as an independent contractor.").  NYU seems to take no position on this issue.

Whether the Work is part of the regular business of NYU (*Reid*, 490 U.S. at 752) (*see Reid*, 490 U.S. at 752) is another factor which decidedly weighs in favor of Fleurimond.  In its Motion, NYU does not claim that is a regular part of NYU's business to create such work.  "The purpose of this factor is to determine whether the hired party is performing tasks that directly relate to the objective of the hiring party's business. For example, work done by a computer programmer employed by a computer software firm would be done in the firm's regular business."  *Aymes*, 980 F.2d at 863 (holding the district court misinterpreted the category, stating, "because Island Swimming is involved in the business of selling swimming pools, however, Aymes's programming was not done in the company's regular business").

NYU's Athletic Department is not in the business of creating artistic works.  *See Reid*, 490 U.S. at 753 (stating that "creating sculptures was hardly the regular business of [the hiring party]").  By contrast, Fleurimond's business is creating works of art (*see generally* Fleurimond Dec.).  *See SHL Imaging, Inc.*, 117 F. Supp.2d at 314 (stating that "[i]t is noteworthy that defendants are in the business of creating and selling frames, while plaintiff's sole business is creating photographic works").  Further, the individual responsible for the new mascot project at NYU's Athletic Department stated that he had never even participated in such a project prior to the subject event.  *See* LeFevre Dep. Trans. p. 172.  Clearly, this was a unique venture for NYU's Athletic Department.  These factors weigh decidedly in Fleurimond's favor.  *See Aymes*, 980 F.2d at 863.

Finally, the method of payment by NYU to Fleurimond for creation of the Work (*see Reid*, 490 U.S. at 751) is clear: there was no payment. *See Salamon v. Our Lady of Victory Hospital* 514 F.3d 217, n. 10 (2d Cir. 2008) (stating that prior to conducting Reid analysis, precedent suggests that the Court find that plaintiff had received some form of remuneration in exchange for work sufficient to call them the "hired party"). Fleurimond's undisputed testimony is that she was never paid for the Work that she created. *See Price v. Fox Entertainment Group, Inc.*, 473 F. Supp.2d 446, 451 (S.D.N.Y. 2007) (no work-for-hire status; artist not compensated)

While NYU continues to assert that Fleurimond was paid $16 per hour for creation of the Work (see Def's Mem., 13), NYU has submitted no evidence to support this fact. NYU has failed to show that Fleurimond was ever paid to create the Work.

Fleurimond was an independent contractor with respect to creating the subject Work. *See Graham v. James*, 144 F.3d 229, 235 (2d Cir. 1998). "Almost all of the Aymes factors line up in favor of that conclusion." *Id*. (the hired party was a skilled computer programmer, paid no benefits, no payroll taxes were withheld, and his engagement by the hiring party was project-by-project). Since NYU's evidence to support its defense is so slight that no rational finder of fact could find in its favor, summary judgment should not be granted in its favor. *See Gallo v Prudential Residential Servs, Ltd*., 22 F.3d 1219, 1223 (2d Cir. 1994); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (stating, "[w]hen the moving party has carried its burden under Rule 56[c], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

Defendant has utterly failed to demonstrate that the subject Work was a "work-made-for-hire." Accordingly, the Court must deny Defendant's Motion for Summary Judgment.

IV.    **THE COPYRIGHT ACT CLEARLY PERMITS PLAINTIFF TO RECOVER
STATUTORY DAMAGES AND ATTORNEY'S FEES IN THIS ACTION**

       Defendant's sole argument for the proposition that Plaintiff is precluded from electing to
recover statutory damages and attorney's fees under the Copyright Act is the fact that Plaintiff
"expressed concerns about possible unauthorized use" of her Work prior to registration of the
Work.  *See* Def's Mem., p 22.  The undisputed facts in this case do not support this tenuous
conclusion.  Plaintiff's undisputed testimony asserts that Defendant's use of the subject Work
occurred after Plaintiff registered the Work with the Copyright Office.

**V. CONCLUSION**

       Based on the foregoing, the Court should deny Defendant's Motion for Summary
Judgment in its entirety and issue an Order (i) granting summary judgment in favor of
Fleurimond as to Defendant's liability; (ii) granting Plaintiff an opportunity to make an
application for a judgment on damages after the close of expert discovery; and (iii) for such other
and further relief as this Court deems just and proper.

Dated:  Huntington, New York
       November 10, 2011

                           CONWAY BUSINESS LAW GROUP, P.C.

                           *By:* Mona R. Conway (MC-4673)

                           33 Walt Whitman Road
                           Suite 310
                           Huntington Station, N.Y. 11746
                           (631) 424-0999
                           (631) 824-9116 (fax)
                           mrconway@optonline.net

mconway@conwaybusinesslaw.com

*Counsel for Plaintiff Ariel Fleurimond*

TO:

Robert W. Clarida, Esquire
Cowan, Liebowitz & Latman, P.C.
1133 Avenue of the Americas
New York, NY 10036
*Counsel for Defendant New York University*