UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

ARIEL FLEURIMOND,

                Plaintiff,

-against-

NEW YORK UNIVERSITY,

                Defendant.

------------------------------------------------------------------------X

09-CV-3739
(ADS) (AKT)

**DECLARATION OF ARIEL FLEURIMOND**

I, Ariel Fleurimond, declare as follows:

1. I am the Plaintiff in the above-captioned action.

2. I make this Declaration upon personal knowledge and, if called to testify, could and would testify to the facts set forth herein.

        A.  **Educational Background**

3. I attended New York University (NYU) as a full-time undergraduate student from 2005 to 2009.

4. While at NYU, I majored in Psychology and minored in Minored in Computer Applications/Web Programming and General Education.

5. From 2009 to 2011, I studied at Adelphi University and received my Master's Degree in Art Education.

        B. **Employment History with NYU**

6. My first employment was while I was a student at NYU; in 2007 I created banners and advertisements for Def Jam Records as a flash programmer and graphic designer.

7. Prior to my work-study employment, I performed vector illustrations, digital art and graphic design as a hobby.

1

8. I worked as a web designer for NYU's College of Dentistry from March to July of 2007 under a Federal Work-Study Program.

9. I was paid at a rate of $12 per hour for my work as a web designer for NYU's College of Dentistry.

10. I was hired as an Equipment Room Aide in the Palladium Athletic Facility of NYU in January of 2007 under a Federal Work-Study Program. (Copy of Employment Offer Letter attached hereto as Exhibit 1).

11. I worked in my capacity as Equipment Room Aide from January of 2007 until approximately September of 2007.

12. As Equipment Room Aide, my job responsibilities entailed distributing gym locks and equipment and laundering and distributing towels to members of the Athletic Facility.

13. I was compensated at a rate of $8 per hour for my work as Equipment Room Aide. *See id*.

14. In approximately March of 2007, I was approached by NYU employee, Nancy Isa, to perform computerized graphic design work for NYU's Athletic Department website. In addition, I was asked to create banner advertisements for the Athletic Department during my equipment room work hours and while at home.

15. I believe that, at that time, Ms. Isa was asking other students, who were employed in the Athletic Department, if they had familiarity with a computer graphics program known as "Photoshop;" because of my known familiarity with this program, Ms. Isa had approached me to offer me additional compensation for the production of banners, shields and seals.

16. I was informed by Ms. Isa that I would be compensated at a rate of $16 per hour for my creation of graphics, such as banners, shields and seals for NYU.

2

17. I later discovered that I was not actually being compensated at a rate of $16 per hour for graphic design work, but that Ms. Isa was doubling my submitted hours as an Equipment Room Aide so that I received $16, instead of $8 per hour for my work.

18. I performed the majority of graphic design work for NYU from my home computer.

19. Occasionally, and upon the request of Ms. Isa, I performed such graphic design work on the NYU campus.

20. As instructed by Nancy Isa, I submitted time sheet invoices directly to her for the hours I had put in performing work in this capacity from home.

21. During the Spring semester of 2007, I was performing overlapping jobs for NYU: Equipment Room Aide and Web Designer for NYU's College of Dentistry.

22. The bi-weekly checks that I received from NYU's Athletic Department for my overlapping work as Equipment Room Aide and graphic designer provided compensation of both without distinction; in other words, the only way to decipher what I was being paid for was to refer to my submitted timesheets and work examples.

23. I later learned that the reason for this lack of clarity was due to Ms. Isa's improper (and perhaps illegal) manipulation of Federal Work-Study documentation.

24. By contrast, the bi-weekly checks that I received from NYU for my work as a web designer for the College of Dentistry were clearly annotated for that work and that work alone.

25. From approximately January, 2009 through June of 2009, I worked as a tutor for NYU's Computer Programming Department.

## C. Creation of the NYU Mascot

26. In approximately March of 2007 – after some weeks of performing graphic design work for NYU's Athletic Department - I was approached by NYU Retails and Sales Manager, Nancy Isa, and she asked me if I knew how to draw.

3

27. When I told her that I was an artist, Ms. Isa asked me if I would be willing to work on creating a new mascot for NYU's Athletic Department.

28. Such work required artistic ability and had nothing to do with the other jobs I was performing for NYU.

29. It was explained to me by Ms. Isa that the Athletic Department of NYU was seeking a new artistic design to represent their new and official mascot.

30. I was further informed by Ms. Isa that the mascot design used at that time by NYU's Athletic Department, referred to as "robo-cat" was outdated and unappealing; it was for this reason that a new design was sought by NYU.

31. Ms. Isa invited me to submit a design, which, it was clearly explained to me, might or might not be chosen and used by NYU.

32. I was told by Ms. Isa that if my design were chosen as a candidate for NYU's new Athletic Department mascot, that negotiation for compensation for my work would take place.

33. I agreed to work on creating a design to present to NYU in my own time.

34. Between March and May of 2007, I created a mascot design that I later revised and named "Orion."

35. No one had knowledge of my creation progress or assisted me in the conceptualization or creation of Orion; I created this work solely myself, using my own inspirations, references and materials.

36. The time I expended in working on the design was never reported to NYU, nor did I keep track of my time in any manner.

37. In or about May of 2007, I presented a preliminary version of Orion to Nancy Isa as a candidate for NYU's Athletic Department mascot.

38. Sometime in the Spring of 2007, I was made aware that Ms. Isa's direct supervisor for the new mascot branding project was Noah LeFevre, Associate Director of NYU's Athletic Department.

39. Through my conversations with Ms. Isa and with Mr. LeFevre directly, I knew that Mr. LeFevre was aware that I had created a preliminary design for potential use as NYU's new Athletic Department mascot.

40. Between approximately October of 2007 and the first few months of 2008, I completed a final version of Orion and presented it to NYU Athletic Department employees, Nancy Isa and Noah LeFevre as a candidate for NYU's Athletic Department mascot. (Copy of Orion attached hereto as Exhibit 2).

41. In May of 2008, I registered the Work (Orion) with the Copyright Office. (Copy of Certificate of Registration and U.S. Copyright Office print-out attached hereto collectively as Exhibit 3).

### D. **Temporary and Limited Use of Orion**

42. By the Fall semester of 2007, I was informed by Noah LeFevre and Nancy Isa that my design would have little-to-no chance of being chosen by NYU for its Athletic Department new mascot unless it could be displayed for presentation among graphic materials that would be used for various promotional materials.

43. For this reason, Orion needed to be seen for its potential use among graphic displays in something Ms. Isa and Mr. LeFevre called the "Branding Book." (Copy of first 18 pages of voluminous Branding Book copy produced by Defendant attached hereto as Exhibit 4).

44. It was my understanding that this Branding Book would be presented to Mr. LeFevre's superiors and NYU's attorneys to persuade these decision-makers into accepting my design as the new mascot. *See id.*

5

45. The Branding Book – and my graphics work associated with it – began in or about September of 2007. *See id*.

46. By the Fall semester of 2007, Orion was occasionally used in conjunction with the graphic design work that I was performing for NYU's Athletic Department; this was for the sole purpose of imagining how my design might be used and displayed in various promotional materials. *See id*.

47. Other designs that I (and perhaps, others) had created were, likewise, used as mock-ups for visualization purposes. *See id*.

48. Part of my job as graphic designer for the Athletic Department was to take original works of art and insert them into my computer graphics models, as instructed, so that a holistic scheme combination of art and computer graphic design could be seen by those in charge of choosing the new mascot design, to perceive if they were visually appealing together. *See id*.

49. As such, Orion, which is the subject Work of this lawsuit, was authorized by me to be used in the Branding Book for the purpose of showing how my design would look in the context of thousands of different graphic designs to promote NYU's Athletic Department. *See id*.

50. By early 2008, Orion was being used in the Branding Book in juxtaposition to graphic designs, displayed on paper so that its future use could be visualized. *See id*.

51. I allowed such use because I wanted NYU to ultimately choose my design and seeing how my Work fit into the Athletic Department's various uses facilitated NYU's decision making on this matter. *See id*.

52. I did not authorize use of Orion for any other purpose by NYU.

53. At this time, I was aware of the fact that NYU might not choose my Work (Orion) as their new mascot.

6

### E. Ownership of Orion

54. There has never been a question in my mind as to my ownership and rights thereof of Orion.

55. In addition, there was never, until the initiation of the instant lawsuit, any question by NYU of my exclusive ownership of Orion.

56. In the Fall semester of 2007, I verbally expressed concerns about possible unauthorized use of my Work to Mr. LeFevre and his assistant, Meredith Lewis.

57. In response to my concerns, I was reassured on several occasions by Mr. LeFevre and Ms. Lewis that use and compensation for my Work would be discussed with and after approval by NYU's "legal team."

58. In May of 2008, I presented my copyright registration materials to Noah LeFevre in person.

59. Also present during this meeting with Mr. Fevre were Ms. Lewis and another student-employee at NYU, Stacey Goto.

60. At that meeting in May of 2008, Mr. LeFevre informed me that once the "legal department" had approved the design as the new mascot, I "would be happy" with the compensation offered.

61. At this time, there were no objections made by anyone employed at NYU regarding the copyright registration of my Work.

62. To the contrary, it appeared that my ownership of the Work was known and accepted by NYU.

63. By November of 2008, I requested from Ms. Lewis the contact information for NYU's legal department so that I could directly discuss use and compensation for my Work. (Copy of Email to Meredith Lewis attached hereto as Exhibit 5).

64. There was no response to my request.

7

65. By the Fall of 2008, I was becoming anxious with respect to NYU's potential use of my Work because my several requests to discuss the matter with Noah LeFevre and NYU's legal department had been ignored.

66. In November of 2008, I contacted Mr. LeFevre in a letter sent *via* email and regular mail, demanding that an agreement for authorized use of my Work be negotiated and executed. (Copy of Email to Noah LeFevre attached hereto as Exhibit 6).

67. Mr. LeFevre did not respond to my correspondence.

68. In May of 2009, I retained counsel for the purpose of negotiating licensing and compensation for my Work and for the possible initiation of a lawsuit against NYU.

69. My attorney wrote to NYU's legal department in June of 2009 in an effort to negotiate compensation for my Work.

70. In a letter dated July 10, 2009, NYU's legal counsel denied my ownership of my Work as a "work for hire." (Copy of July 10, 2009 Letter from NYU's legal counsel attached hereto as Exhibit 7).

71. NYU did not contest my copyright registration of the Work except to say that I misrepresented the truth in asserting to the Copyright Office that I was the sole creator of the Work; NYU stated that the Work was a collaboration of several NYU employees. *See id.*

F. **Compensation for Orion**

72. I was never compensated for my Work, which was used by NYU in an unauthorized manner.

73. Although NYU claims that I was compensated on an hourly basis for creation of the Work, NYU had no manner in which to compensate me since I never submitted a bill, invoice or any other notations of time spent on creating Orion.

8

74. Throughout 2007 and the first half of 2008, I had several verbal conversations with Nancy Isa regarding how and when negotiations for compensation of my Work would take place.

75. Ms. Isa had passed this responsibility onto her supervisor, Mr. LeFevre.

76. Prior to and after registration of my Work with the Copyright Office (and disclosure thereof to Mr. LeFevre in May of 2008), I had several conversations with Noah LeFevre regarding my compensation for Orion.

77. As a result of numerous verbal discussions, both Ms. Isa and Mr. LeFevre were well-aware of the fact that I had received no compensation for my Work.

78. In fact, in May of 2008, Mr. LeFevre told me that I *would* "be happy" with the compensation offered if and when my design was approved by NYU's legal department for use by NYU's Athletic Department.

79. In or about June of 2008, Mr. LeFevre advised me that NYU's "legal team" would be in touch with me regarding compensation for my Work.

80. It never occurred to me during this time period – while I was doing graphic design work for NYU - that NYU employees were deceiving me into assisting them with their theft of my Work.

81. I naively trusted the assurances of the people I worked with at NYU and did not think it possible that I was being misled or deceived.

82. By the latter months of 2008, I ultimately became concerned by the evasiveness of LeFevre with respect to our discussions about compensation for my Work; it was then I realized that something was amiss.

83. However, it was not until July of 2009, through a letter to my attorney by NYU's counsel, that I first became aware that NYU had no intentions of compensating me for my Work. *See* Exh. 7.

9

G. **NYU's Unauthorized Use of Orion**

84. In the summer of 2008 was the first time I discovered that NYU was using my Work as its Athletic Department's official mascot (no one had informed me that Orion had been chosen for such use). (Copy of Photo and Website print-out sampling attached collectively hereto as Exhibit 8).

85. I did not give NYU permission to use my Work in any manner other than that of use in the Branding Book, which, to my understanding, was being compiled in order to visualize the potential uses of the Work.

86. In the summer of 2008, I discovered that a depiction of Orion was affixed to the Palladium Athletic Facility's gym floor.

87. Between approximately July of 2008 and throughout 2009, I also discovered that Orion was depicted on printed ads, banners, merchandise and on NYU's Athletic Department website.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this <u>11</u> day of September, 2011.

*Ariel Fleurimond*
Ariel Fleurimond

10