UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ARIEL FLEURIMOND,

                                  Plaintiff,

    -against-

NEW YORK UNIVERSITY,

                                Defendant.
-----------------------------------------------------------------x

ORAL ARGUMENT
REQUESTED

CV 09-3739 (ADS) (AKT)

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## Table of Contents

Page

PRELIMINARY STATEMENT ..... 1

I. THE WORK WAS WITHIN THE SCOPE OF PLAINTIFF'S EMPLOYMENT ..... 3

II. THE ALLEGED "INCOMPLETE" INVOICES AND ALLEGED ORAL AGREEMENT ARE IRRELEVANT ..... 4

A. The Alleged "Omissions" From the Invoices Are Immaterial ..... 5

B. The Alleged Oral Agreement Is Immaterial ..... 5

III. PLAINTIFF WAS AN EMPLOYEE UNDER *REID* ..... 6

IV. PLAINTIFF CANNOT RECOVER STATUTORY DAMAGES OR ATTORNEY'S FEES ..... 9

CONCLUSION ..... 10

## PRELIMINARY STATEMENT

Plaintiff has done it again. She has submitted yet another Memorandum of Law to this Court that squarely refuses to address the dispositive fact in this case: that creation of the subject work was within the *scope* of Plaintiff's admitted employment by NYU. Plaintiff again concedes, in her November 11, 2011 Memorandum ("Pl. Mem.") and Declaration ("Pl. Dec.") in response to NYU's instant motion, that she was employed by NYU to perform "graphic design work for NYU's Athletic Department." Pl. Dec. at para. 26. Specifically, "Fleurimond was an employee of NYU during the time she created the work." Pl. Mem. at 9. Plaintiff further concedes that she "received $16, instead of $8 per hour" for her "graphic design work." Pl. Dec. at para. 17.

Her entire argument thus rests on Plaintiff's alleged subjective belief that making the design at issue was not the precise sort of "graphic design work" for which she was *admittedly* employed and paid. This subjective belief, if it even existed at the time, was not timely communicated to NYU, by Plaintiff's own admission, nor was it mentioned in the pleadings or dismissal motion papers in this case, see NYU's initial Memorandum of Law in support of this motion at 6, ("NYU Mem."). And as noted in NYU's Memorandum at 5, Plaintiff still has not come forward with any evidence to support the distinction she now urges this Court to make between graphic design and her work on the design at issue. On this basis alone, NYU's motion should be granted.

To the extent there is an issue at all, it can only be a question of the *scope* of Plaintiff's employment. Rather than addressing that issue and confronting the well-settled law that compels a finding that the work was within the scope of Plaintiff's employment, see NYU's initial Memorandum at pages 19-22, Plaintiff instead spends almost her entire Memorandum seeking to

1

apply the multi-factor analysis from *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989)("*Reid*"). The *Reid* test has no application where, as here, Plaintiff has conceded that she was an employee during the relevant time period. See NYU Mem. at 14, citing *Le v. City of Wilmington*, 736 F. Supp. 2d 842 (D. Del. 2010)("even if Le created the Work on his own time, if he did so *during his employment* and without a specific written agreement from the City to the contrary, the copyright on the Work belongs to the City")(granting summary judgment for defendant); and *Genzmer v. Public Health Trust of Miami-Dade County*, 219 F. Supp. 2d 1275, 1281-82 (S.D. Fla. 2002)(summary judgment for defendant, where worker had developed computer software "during the *period* in which he was employed").

To be absolutely clear, the *Reid* test is solely to determine whether a worker is an employee or an independent contractor *during the relevant time period,* not whether the particular artistic project is within the scope of the employment. Once employee status during the relevant period is decided under *Reid* (and/or as here, by Plaintiff's admission) the question becomes entirely one of the *scope* of the employment, analyzed under a different test, based on a different section of the RESTATEMENT of agency. See NYU Mem. at 19-22. *Reid* does not address the issue of "scope of employment" whatsoever, and neither does Plaintiff.

Further, as NYU has demonstrated in its prior Memorandum, Plaintiff's alleged oral agreement for "compensation" cannot alter the work-for-hire status of the design at issue, nor can Plaintiff's alleged intentional failure to submit invoices for her initial work on the design, especially where Plaintiff admits that she did not make NYU aware of the alleged incompleteness of the invoices. See NYU Mem. at 7-10.

In short, nothing in Plaintiff's November 11 Memorandum or Declaration in any way alters the arguments or conclusions NYU set forth in its initial Memorandum in support of this

2

motion, and in fact they strengthen NYU's case by admitting, yet again, that "Fleurimond was an employee of NYU during the time she created the work." Pl. Mem. at 9.

I. THE WORK WAS WITHIN THE SCOPE OF PLAINTIFF'S EMPLOYMENT

In NYU's initial Memorandum, at 19-22, NYU demonstrates that the subject work was within the scope of Plaintiff's employment. To summarize, courts determine the scope of employment by examining three factors derived from the *RESTATEMENT* of agency law: whether the work is of the type which the creator was hired to perform; whether the design was created "substantially within the authorized time and space limits" of the job; and whether it was "actuated, at least in part, by a purpose to serve" the employer's interests. *See, e.g., Avtec Sys., Inc. v. Peiffer,* 38 USPQ2d 1922, 1925 (4th Cir. 1995). This Court itself recognized these factors in its earlier decision in this case, *Fleurimond v. New York University,* 722 F. Supp. 2d 352, 356 (E.D.N.Y. 2010), citing *Avtec Systems.* Plaintiff ignores these factors yet again, for the simple reason that they all weigh so heavily against her.

Here, Plaintiff has conceded from the beginning that the work was "actuated" to serve NYU's interests; she stated at para. 7 of her Complaint that the work "was created at the request of Defendant." Further, the work – graphic design utilizing computer technology -- was of the type that Plaintiff was hired to perform. It does not matter that "illustration" *per se* was not among Plaintiff's admitted graphic design duties for NYU, if indeed the distinction between "illustration" and "graphic design" has any validity in the context of this work for NYU's Athletic Department; see *Cramer v. Crestar Financial Corp.*, 38 U.S.P.Q.2d 1684 (4th Cir. 1995), at 1688 ("Creation of that program was work of the type that Cramer was hired to perform . . . [a]lthough computer programming was not among Cramer's duties *per se*"). Plaintiff asserts that *Cramer* is "moot," Pl. Mem. at 7, but offers no rationale as to why. Whether Plaintiff was

3

creating banners, shields or mascots, all of her graphic design work was clearly of the type she was hired to produce.

The design was also created "substantially within the *authorized* time and space limits" of the job. Even if Plaintiff's work were largely performed off of NYU's premises and at hours of Plaintiff's choosing, those times and places were authorized by NYU. See *Saenger Org. Inc. v. Nationwide Ins. Co.,* 119 F.3d 55, 60 (1st Cir. 1997)(work-made-for-hire found where parties "agreed that [individual] would work nights and weekends on developing" the work). Plaintiff here does not (and could not truthfully) allege that the work she performed at home was not "authorized" by NYU – it is undisputed that NYU specifically asked her to submit invoices for the time she spent working from home. Accordingly, the evidence overwhelmingly compels the conclusion that the work Plaintiff performed on the registered design was within the *scope* of her employment. Plaintiff's failure to confront this critical issue speaks volumes.

## II. THE ALLEGED "INCOMPLETE" INVOICES AND ALLEGED ORAL AGREEMENT ARE IRRELEVANT

Because the Orion design is so clearly a work made for hire under governing law, Plaintiff offers an unsupported eleventh-hour argument that she owns the copyright in the work because: (a) she allegedly did not submit invoices for the time she spent on the "initial creation" of the design, Fleur. September Dec. at Para. 36; and (b) she had an oral agreement with NYU that this design, unlike all the other designs she submitted in the course of her employment, was a work for which NYU would pay a royalty, if it were accepted. Fleur. September Dec. at Paras. 32, 74, 76, 78, 79, 82. Each of these allegations is irrelevant because as a matter of law they cannot alter the ownership of copyright in the work by NYU under work-for-hire principles.

4

A.   The Alleged "Omissions" From the Invoices Are Immaterial

Plaintiff willfully misunderstands NYU's argument about the alleged "omissions" from the invoices. Pl. Mem. at 6. NYU does not contend that the alleged "omissions" related to Plaintiff's Equipment Room or College of Dentistry work, but to the work on the Orion design. See NYU's Initial Mem. at 8. No good-faith reading of NYU's argument could possibly support Plaintiff's mischaracterization of it.

As to the invoices, Plaintiff *admits* in her deposition that that she never *told* anyone at NYU that she was choosing not to submit invoices for the time she spent creating the Orion design. Clarida Dec. Exh. EE ("Q. Did you ever say when submitting a time sheet 'this does not include my time on the other design?' A. "I did not say that"). Such a private act of omission by Plaintiff, even if it occurred, does not create a genuine issue of material fact for purposes of summary judgment. See *Auscape Int'l v. Nat. Geographic Soc'y,* 409 F. Supp. 2d 235, 240, n.16 (S.D.N.Y. 2004)(Kaplan, J.)("Plaintiffs' declarations that they did not *intend* to grant rights to use their work . . . are insufficient to raise a genuine issue of material fact. As this Court explained previously, 'statements of subjective intention uncommunicated to the other contracting party are *immaterial* in construing the terms of the contract'"). Plaintiff argues, Pl. Mem. at 6, that *Auscape* is "inapplicable," but offers no rationale as to why.

B.   The Alleged Oral Agreement Is Immaterial

The alleged oral agreement whereby NYU purportedly agreed to pay a royalty for use of the design (if it were to be selected), even if assumed to exist, cannot alter the ownership of copyright in the work at issue, for three reasons: Plaintiff concedes it was not about copyright ownership; it lacked a price term; and it was not in writing. (1) By Plaintiff's own description, the alleged oral agreement was *not* about copyright ownership; it was only about whether Plaintiff would receive a royalty. Fleur. September Dec. Paras. 32, 74, 76, 78, 79, 82; Pl's 56.1

5

Statement at Para. 19. Such an agreement about mere "payment issues," even if it happened, has nothing to do with the ownership of copyright in a work-made-for-hire. See *Saenger* at 63 (alleged agreement as to "payment issues" did not alter copyright ownership). (2) Under New York law, such a purported oral agreement would also be unenforceable for vagueness because no price term was ever agreed to. See *Martin Deli v. Schumacher*, 52 N.Y. 2d 105 (1981)(renewal at rent "to be agreed upon" too indefinite to enforce). Plaintiff asserts that *Martin Deli* is "inapposite" but offers no rationale as to why. (3) Further, even if the alleged oral agreement had actually dealt with copyright ownership – and not even Plaintiff alleges that it did -- it could not alter the status of the subject design as a work made for hire because it is not in writing. *See Cramer v. Crestar* at 1688 (alleged delivery of work "on the condition" that employer must reward creator held inadequate to defeat work made for hire: "The work-for-hire exception is overridden only by a clear writing, signed by the parties, that reserves authorship rights to the employee. 17 U.S.C. § 201(b). No such writing existed here. Cramer's claim that there was an oral agreement that Continental could use the program only so long as he remained the employee in charge of its use is therefore *irrelevant*")(emphasis added). Accordingly, Plaintiff's alleged oral agreement here is *irrelevant* at best, fictitious at worst.

### III. PLAINTIFF WAS AN EMPLOYEE UNDER *REID*

As noted above, Plaintiff has consistently conceded in this action, and particularly in the instant cross-motions for summary judgment, that she was an employee during the relevant time period. Most recently: "Fleurimond was an employee of NYU during the time she created the work." Pl. Mem. at 9. She alleges (Pl. Mem. at 13) that she was not an employee "for the purpose of creating NYU's new mascot" but this attempted carve-out of her employee status at most goes to the question of *scope* of employment, not whether she was an employee *vel non*.

Accordingly, the multi-factor *Reid* analysis is unnecessary in this action, because of Plaintiff's concession. Nevertheless, Plaintiff argues *Reid* at great length in her Memorandum, taking care to ignore the voluminous evidence of record that NYU cited in its initial Memorandum.

That evidence is overwhelming and largely unrebutted, save for Plaintiff's unsupported blunderbuss denials of the obvious. Plaintiff asserts that NYU has "submitted no proof to rebut the presumption of Plaintiff's ownership," Pl. Mem. at 8. This is incorrect. In fact, NYU submitted a declaration annexing 34 exhibits from the record that do precisely that.

At all times, NYU retained and exercised the sole power to accept, reject, or modify any design prepared by Plaintiff at NYU's request, including the design identified in the Complaint as Orion. Clarida Dec. Exh. E. Throughout the term of Plaintiff's employment with NYU, NYU retained and exercised the right to assign other projects to Plaintiff. Clarida Dec. Exh. F, Exh. J. (Plaintiff asserts that NYU "ignores" the additional-projects factor, see Pl. Mem. at 14. This is incorrect. See NYU's Initial Mem. at 16 and Exhibits cited therein.) Many NYU employees, in addition to Plaintiff, were involved in preparing the design identified in the Complaint as Orion. Clarida Dec. Exh. K, Exh. L, Exh. M. Plaintiff had no control over selecting or hiring any assistants or co-workers on any projects during the term of her employment with NYU, including the preparation of the design identified in the Complaint as Orion. Clarida Dec. Exh. N.

It is a regular part of NYU's business to develop graphic materials to promote its programs and activities, including the programs and activities of the NYU athletic department. Clarida Dec. Exh. O. (Plaintiff asserts, Pl. Mem. at 16, that "NYU does not claim that it is a regular part of NYU's business to create such work." This is incorrect. See NYU's initial Memorandum at 17.) At all relevant times, Plaintiff was subject to full W-2 tax treatment and withholding, including Social Security and Medicare withholding. Clarida Dec. Exh. G. Plaintiff

was entitled to certain benefits as an NYU employee including workers' compensation. Clarida Dec. Exh. P. (Plaintiff asserts, Pl. Mem. at 12, that "NYU does not attempt to claim that it provided Fleurimond with employee benefits." This is incorrect. See NYU's initial Memorandum at 16.) The design registered with the Copyright Office and that is the subject of this action was prepared, by Plaintiff and other NYU employees, using Adobe Illustrator CS3 computer software and computing equipment provided by NYU, as well as using software and a laptop computer provided by Plaintiff. Clarida Dec. Exh. Q and Exh. R. The design registered with the Copyright Office and that is the subject of this action was prepared, by Plaintiff and other NYU employees, on NYU premises as well as off-premises. Clarida Dec. Exh. S and Exh. T; Fleur. Dec. Para. 19.

Specifically with regard to NYU's right of control, Plaintiff misunderstands and vastly overstates the degree of control required of an employer. The Supreme Court itself in *Reid* found that the control factor favors the employer where the hiring party "directed enough of Reid's work to ensure that he produced a sculpture that met their specifications." 490 U.S. 730, 753 (1989). The RESTATEMENT (SECOND), on which the Supreme Court expressly relied, recognizes that the necessary control by the employer "may be very attenuated." See § 220 comment d. This is consistent with earlier (pre-*Reid*) case law applying the RESTATEMENT, such as *Tieberg v. Unempl. Ins. Appeals Bd.*, 2 Cal. 3d 943 (1970)(holding that free-lance television writers were employees under RESTATEMENT standard even where they worked "in their own way" if hiring party controlled final product such as by "elimination or alteration of dialogue").

Further, control is not dispositive where the other factors indicate an employer-employee relationship, as they so strongly do here. *See Martha Graham School v. Martha Graham Center*, 380 F.3d 624, 642 (2d Cir. 2004)(finding work for hire under 1976 Act), quoting *Carter v.*

8

*Helmsley-Spear*, 71 F.3d 77, 86 (2d Cir. 1995)(work for hire found even when artists had "complete artistic freedom"); *Carter v. Helmsley-Spear, Inc.*, 71 F.3d 77, 86 (2d Cir.1995), *cert. den.* 517 U.S. 1208 (1996)(even high level of artistic skill will not defeat a finding of work made for hire when other *Aymes* factors weigh in favor of finding an employment relationship); *See also Saenger Org. Inc. v. Nationwide Ins. Co.*, 119 F.3d 55, 60 (1st Cir. 1997)(high level of skill does not preclude entry of summary judgment for employer as to work-made-for-hire).

Tellingly, Plaintiff does not even attempt to distinguish *Saenger*, *Carter* or *Martha Graham*, none of which are mentioned in her Memorandum at all. In *Saenger*, on facts very similar to those here, the First Circuit affirmed a grant of summary judgment for the employer in a work-made-for-hire dispute. The worker in that case had created some texts and manuals regarding insurance licensing, and claimed to own the copyright in them. Like Plaintiff here, he worked many nights and weekends, claimed to have had an oral agreement with the employer as to payment for the work, had other duties and employment relationships simultaneously, and had a high level of skill; but he was paid on W-2 tax forms, worked at the specific behest of the employer, subject to the employer's right to control the manner and means of the work, used many of the employer's tools, instrumentalities and personnel to produce the finished work, and referred in court papers to having been "employed" by the hiring party, as Plaintiff consistently does here. Summary judgment was granted for the employer.

### IV.   PLAINTIFF CANNOT RECOVER STATUTORY DAMAGES OR ATTORNEY'S FEES

Finally, even if Plaintiff can avoid summary judgment on the question of ownership she cannot recover statutory damages or attorney's fees in this action as a matter of law because the alleged infringement commenced no later than the fall semester of 2007, and Plaintiff's copyright registration was not filed until the spring of 2008. See 17 U.S.C. § 412, Clarida Dec.

9

Exh. CC ("The preliminary versions of the design were first unveiled *against my wishes* approximately a year before")(emphasis added), and NYU's Initial Memorandum at 22-23.

## CONCLUSION

Based on the reasons and authorities set forth above, Defendant NYU respectfully requests that NYU's motion for summary judgment be granted in all respects.

Dated:  New York, New York
        November 21, 2011

                Respectfully submitted,
                COWAN, LIEBOWITZ & LATMAN, P.C.

                By: _/s/ Robert W. Clarida_
                    Robert W. Clarida (rwc@cll.com)
                1133 Avenue of the Americas
                New York, NY 10036
                (212) 790-9266
                Attorneys for Defendant

To:  Mona R. Conway, Esq.
      Conway Business Law Group, P.C.
      33 Walt Whitman Road, Suite 310
      Huntington Station, NY 11746