**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
ARIEL FLEURIMOND,

                              Plaintiff,

                  -against-                               **MEMORANDUM OF**
                                                         **DECISION AND ORDER**
                                                         09-CV-3739 (ADS)(AKT)
NEW YORK UNIVERSITY,

                              Defendant.
--------------------------------------------------------X

**APPEARANCES:**

**Conway Business Law Group, P.C.**
*Attorneys for the Plaintiff*
33 Walt Whitman Road, Suite 310
Huntington Station, NY 11746
          By:     Mona R. Conway, Esq., Of Counsel

**Reitler Kailas & Rosenblatt LLC**
*Attorneys for the Defendant*
885 Third Avenue, 20th Floor
New York, NY 10022
          By:     Robert W. Clarida, Esq., Of Counsel

**SPATT, District Judge.**

          This case arises from the allegations by the plaintiff Ariel Fleurimond ("Fleurimond" or

"the Plaintiff") that she is the sole creator and copyright owner of "Orion", a caricatured drawing

of a cougar.  On August 27, 2009, she commenced this action against New York University

("NYU" or "the Defendant"), alleging that it infringed upon her copyright by using and selling

various items that bear the Orion design without her consent, in violation of the Copyright Act of

1976, 17 U.S.C. § 101, *et seq.*  Presently before the Court are the parties' motion and cross-

motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons

set forth below, the Court denies the Plaintiff's motion for summary judgment and grants the

Defendant's cross-motion for summary judgment dismissing the complaint.

## I. BACKGROUND

The following constitutes the undisputed facts of the case unless otherwise noted.  These

facts are drawn from the parties' summary judgment submissions, as well as the deposition

transcripts requested by the Court and the stipulated facts in the Joint Pre-Trial Order filed on

April 9, 2012.

### A.  The Initial Employment Relationship

NYU is a non-profit corporation duly organized and existing under the laws of New York

State where it acts primarily as an educational institution.  Fleurimond is a resident of the County

of Suffolk in the State of New York.  In the fall of 2005, she enrolled in NYU's baccalaureate

studies program.  In January of 2007, Fleurimond registered with a Federal Work Study

Program.  Thereafter, NYU hired Fleurimond to work as an equipment room aide for the NYU

Athletics Department at their two gym facilities, Coles Gym and Palladium Gym ("the NYU

athletic facilities").

Fleurimond worked in her capacity as an equipment room aide from January of 2007

until approximately September of 2007.  As an equipment room aide, Fleurimond was

responsible for distributing gym locks and equipment and laundering and distributing towels to

members of the NYU athletic facilities.  To keep track of her hours, Fleurimond used technology

where she would scan her hand to check in when she arrived for work, and scan her hand again

when she left to clock out.  Fleurimond was compensated for her work as an equipment room

aide at a rate of $8.00 per hour.  In addition to this position, Fleurimond worked as a web

designer for NYU's College of Dentistry from approximately March to July of 2007.

Fleurimond was compensated for her work at the College of Dentistry at a rate of $12.00 per hour.

In or around March of 2007, Fleurimond was approached by NYU Retails and Sales Manager Nancy Isa who inquired if she would be interested in doing graphic design work for the Athletics Department.  Fleurimond accepted the graphic design position, and her compensation was increased from $8.00 per hour to $16.00 per hour in recognition of the different nature and scope of her employment.  In order to get compensated for her graphic design work, Fleurimond would submit invoices to Isa with the number of hours worked.  No new paperwork was filled out for Fleurimond's new position.  As a result, her official recorded compensation rate for the NYU Athletic Department was still $8.00 per hour.  Accordingly, in order to ensure that Fleurimond was paid $16.00 per hour for her graphic design work, Isa would double the hours that Fleurimond submitted.  Isa would then provide that information to Alex Martinez, who was in charge of Human Resources for the Athletic Department, for him to process for payment.

Fleurimond's graphic design work initially consisted of adding graphics to the NYU athletic department website; creating banners to be placed in the Coles gym and Palladium gym; advertisements for the NYU athletic store known as the "Sweat-N-Shop"; and advertisements for athletic department events ("the promotional materials").  (Fleurimond Dep. at 36.)  However, Fleurimond never did work on revamping the website, but rather focused her graphic design work on the banners, signs, and seals.  (Id. at 40–41.)  According to Fleurimond, she did the majority of her graphic design work at home on her own computer, although she sometimes would work on campus if Isa needed her to work on banners, shields, or signs while she was there.  (Fleurimond Decl., ¶¶ 18, 19; Fleurimond Dep. at 41–43.)  Regardless of whether she worked from home or on campus, Fleurimond submitted invoices to Isa for compensation.  It is

3

undisputed that Fleurimond was compensated at a rate of $16.00 per hour for this work, and that this compensation was subject to "full W-2 tax treatment and withholding, including Social Security and Medicare withholding".  (Def.'s 56.1 Stmt., ¶ 23.)

## B.  The Mascot Design Project

Fleurimond states that, approximately three weeks after she began her graphic design work, Isa approached her and asked her if she "knew how to draw".  (Fleurimond Decl. ¶ 29.) Fleurimond asserts that, after she informed Isa that she was an artist, Isa asked her to participate on a project to create a brand new mascot design for NYU's Athletic Department ("the mascot design project").  The unofficial NYU Athletic Department mascot was a bobcat, and, prior to the initiation of the project, the mascot design was a version of a bobcat referred to as "robo-cat". According to Fleurimond, Isa informed her that a new mascot design was being sought by NYU because "robo-cat" was outdated and unappealing.  (Fleurimond Decl. ¶ 30.)

At this point, the Court must pause to note that, despite being raised by NYU both in argument and evidence, Fleurimond's summary judgment submissions fail to address an entire set of factual circumstances highly relevant to the outcome of these motions.  Namely, that Fleurimond's work on the mascot design project was not limited to the creation of the mascot design at issue in this litigation.  Thus, the Court draws many of the relevant facts from Fleurimond's deposition and accepts them as her admissions of fact.

According to Fleurimond, Isa invited her to submit a mascot design, and "clearly explained" to her that her design might or might not be chosen and used by NYU.  Fleurimond further states that Isa told her that if her design was ultimately chosen "as a candidate for NYU's new Athletic Department mascot", at that point, "negotiation for compensation for [her] work would take place". (Fleurimond Decl., ¶ 32.)  NYU does not dispute that Isa approached

Fleurimond to participate in creating a new mascot design.  However, NYU contends that Fleurimond was one of many employees "extensively and substantively involved in designing the work at issue".  (Def.'s Counter 56.1 Stmt., ¶ 11.)  In addition, NYU disputes that Isa made any representation that Fleurimond would receive additional compensation if her design was chosen.

Fleurimond began work on various mascot designs.  The first mascot that Fleurimond worked on was referred to as "giant cat".  According to Fleurimond, Isa made the request to her in the office, but she worked on creating "giant cat" at home.  (Fleurimond Dep. at 49–50.)  She then worked on revisions of giant cat based on guidance from Isa.  Subsequently, at the request of NYU, Fleurimond worked on additional versions of the mascot, including "forward facing cat", "strutting cat", "happy cat", and "kid cat".  (Id. at 65.)  Preliminary versions of the mascot design are referred to as "trial cats".  It is undisputed that Fleurimond submitted invoices for her work sketching and revising these trial cats; and that she was compensated in the same manner and at the same rate as her graphic design work on the promotional materials.

Fleurimond contends that, between March and May of 2007, while she was working on the trial cats and other graphic design projects, she created a mascot design using her own inspirations, references, and materials, and without any assistance in her conceptualization or illustration.  The design that Fleurimond created was a three-quarter view of a cougar head and face, and was a preliminary version of the design at issue in this litigation, which Fleurimond later named "Orion".  Fleurimond first presented this preliminary version of Orion to Isa in May of 2007 informally, in a sketch on a napkin.  Fleurimond then converted the sketch "to a vector and presented it via graphic in an e-mail with notes".  (Fleurimond Dep. at 72.)  According to Fleurimond, she did not keep track of how much time she spent creating and conceptualizing

5

Orion, nor she inform anyone at NYU as to how many hours she spent on Orion.  In her

deposition, Fleurimond states that, after she presented Isa with the preliminary version of Orion,

she continued to do work on the other trial cats.  Furthermore, at her deposition, Fleurimond

contends that, when she presented the preliminary version of Orion to Isa, she "set it apart and

verbally explained to them how it was different from the other things [she] was doing" and that

she presented it for NYU to consider "outside of the scope of that they were asking [her] for at

the time".  (Fleurimond Dep. at 261–62.)

     NYU does not dispute that Fleurimond created a preliminary version of Orion that was

presented to Isa in May of 2007.  However, NYU disputes the existence of any oral agreement

with respect to ownership or compensation.  NYU further disputes that there was an agreement

to treat the preliminary version of Orion differently than the other trial cats.

     When Fleurimond returned to the campus in the fall of 2007 following her summer

vacation, her main point of contact for the mascot design project was either NYU employee

Meredith Lewis, or Noah LeFevre, the Associate Director of NYU's Athletic Department, who

was overseeing the new mascot branding project for the NYU Athletic Department.  Lewis also

took over as Fleurimond's contact for her graphic design work that involved creating the

promotional materials.

     Between approximately October of 2007 and the first few months of 2008, Fleurimond

completed a final version of Orion, which she presented to NYU "as a candidate for NYU's

Athletic Department mascot" (Fleurimond Decl., ¶ 40.)  Fleurimond does not deny that during

this time, she received input from NYU employees on certain changes to make to the Orion

design.  However, the parties dispute the extent to which other NYU employees participated in

the revisions.  According to Fleurimond, NYU's participation in the creation of Orion was

"minimal, involving instructions given to Fleurimond, which were very general". (Pl.'s Br. at 22.) For example, Fleurimond made changes "[b]ecause the department or rather Noah would say is there something you can do to make it more fierce and then I would go home and then I would make the change and then present it to him. There were minor changes." (Fleurimond 137–38.)

By contrast, NYU contends that its employees were heavily involved in the revisions. For example, NYU employee Frank Sicignano, the Senior Associate Athletic Director, testified that he sat in on three to four staff meetings with thirty to forty Athletic Department staff members and coaches regarding the mascot. At these meetings, Sicignano testified that LeFevre would present the most recent version of the mascot, and the attendees, usually the coaches, would provide comments. Then, LeFevre "would take back [their] comments and have them incorporated into the next series of designs". (Sicignano Dep. at 147.) With regard to the type of comments, Sicignano testified:

> Q. Tell me what you recall as far as what the other coaches comment on?
>
> A. It looks to[o] effeminate. It looks too cartoonish. It looks too childish. Change the color. Change -- the teeth need to be more -- the eyes need to be more angry. Fill in the ears. Add the whiskers. The collar doesn't look right. The collar, it used to have spikes on it. I mean, there were many, many, many different variations.

(Id. at 149.) LeFevre also testified that he gave specific comments:

> A. We went through countless drafts finally getting to a draft that we thought, as a group, we could work with. Each and every step along the way she received very specific directions as to what we wanted changed, what we wanted tweaked, what we wanted altered to get it to a point where it was a creation that we could develop and that we could work on collectively.
>
> . . .
>
> Q. The input that you personally had into the final product that we have here as Defendant's Exhibit 14, was your input more specific

7

at any time than general comments such as, Make it look more
fierce?

A. Oh, yes. A few examples might be, move the eyes slightly
closer together, add a set of top teeth, widen the border around the
collar, let's see a draft with a brown that's two shades darker, three
shades darker, four shades darker. As we got further into the
project, the direction got more and more specific, because we were
honing in on what the final version was going to be.

(LeFevre Dep. at 246, 250–51.)

Furthermore, in or about September of 2007, Fleurimond began working with NYU to
include a version of Orion in a "Branding Book", which incorporated Orion into various graphic
displays.  According to Fleurimond, she agreed to permit NYU to use the images of Orion in the
Branding Book because Isa and LeFevre told her that her design "would have little-to-no chance
of being chosen by NYU for its Athletic Department new mascot unless it could be displayed for
presentation among graphic materials that would be used for various promotional materials".
(Fleurimond Decl., ¶ 42.)  Fleurimond states that it was her understanding that the Branding
Book "would be presented to Mr. LeFevre's superiors and NYU's attorneys to persuade these
decision-makers into accepting [her] design as the new mascot".  (Id., ¶ 44.)  Although NYU
admits that Fleurimond did work incorporating the images into the Branding Book, it denies any
conversations in which NYU employees told Fleurimond that the Branding Book was needed to
obtain approval of her design.  Neither party disputes that Fleurimond was compensated for her
work incorporating the images into the Branding Book in the same manner and at the same rate
as her graphic design work on the promotional materials.

In or about May of 2008, Fleurimond registered the final version of Orion as "New York
University Mascot:  Violet the Bobcat" with the Copyright Office, listing herself as the sole
author and identifying the nature of the work as a "Vector Illustration".  (Pl.'s SJ Motion, Ex. 2
(final version of Orion); id., Ex. 3 (copyright registration dated June 26, 2008).)  It is undisputed

that, several months after Fleurimond's filing with the Copyright Office, NYU began using the Orion design on apparel, merchandise, promotional items, the NYU website, and on athletic team uniforms.

## C.  Communications Regarding Copyright Ownership

Throughout 2007 and the first half of 2008, Fleurimond states that she "had several verbal conversations with Nancy Isa regarding how and when negotiations for compensation of [her] Work would take place".  (Fleurimond Decl., ¶ 74.)  In the fall semester of 2007, Fleurimond states that she "verbally expressed concerns about possible unauthorized use of [her] Work to Mr. LeFevre and his assistant, Meredith Lewis."  (Id., ¶ 56.)  In response, Fleurimond contends that she was "reassured on several occasions by Mr. LeFevre and Ms. Lewis that use and compensation for [her] Work would be discussed with and after approval by NYU's 'legal team'".  (Id., ¶ 57.)  In addition, Fleurimond contends that after she presented her copyright to LeFevre in May of 2008, she attended a meeting with LeFevre, Lewis, and another student-employee, Stacey Goto, where LeFevre informed Fleurimond that "once the 'legal department' had approved the design as the new mascot, [she] 'would be happy' with the compensation offered."  (Id., ¶¶ 59, 60.)  Fleurimond contends that in June of 2008, LeFevre informed her that NYU's legal team "would be in touch with [her] regarding compensation for [her] Work".  (Id., ¶ 79.)

NYU denies that any of these conversations took place, and contends that Fleurimond was compensated for her work creating and revising the Orion designs in the same manner and at the same $16.00 per hour rate as her other graphic design work, including her other work on the mascot design project, namely the creation and revision of non-Orion trial cats; revising Orion; and incorporating the mascot designs into promotional materials and the Branding Book.

Fleurimond denies that she received any compensation for the creation of Orion, and states that she could not have been compensated for her work creating and conceptualizing Orion because she never submitted invoices for that work.  There is no dispute that the face of the Plaintiff's invoices do not reflect whether the hours submitted were for work on Orion, or other mascot designs.

The first written communication regarding Fleurimond's assertion of copyright ownership is a November 10, 2008 email to Lewis in which Fleurimond requests the contact information for NYU's legal department so that she could directly discuss the use and compensation for her work.  (Pl.'s SJ Motion, Ex. 5.)  Subsequently, on November 24, 2008, Fleurimond sent a letter to LeFevre "demanding that an agreement for authorized use of [her] Work be negotiated and executed".  (Pl.'s SJ Motion, Ex. 6.)  LeFevre did not respond to Fleurimond.  In May of 2009, Fleurimond retained counsel.  Fleurimond's counsel contacted NYU's legal department in June of 2009 to negotiate compensation for her work.  On July 10, 2009, NYU's legal counsel responded that Fleurimond was not entitled to ownership of Orion because Fleurimond "was retained and paid as an employee of the University for all of the work that she performed on behalf of the NYU Athletics Department, including but not limited to creation of [Orion]" and therefore they "consider[ed] any product of her work to have been a work for hire for the University, which, absent any other agreement to the contrary, remains the property of the University".  (Pl.'s SJ Motion, Ex. 7.)  NYU's counsel also noted that it was their understanding that Fleurimond "did not work alone on the design, contrary to her assertion to the Copyright Office", and therefore "given the collaborative effort associated with creation of the design, Ms. Fleurimond cannot be termed the 'creator of NYU Athletics' new mascot'".  (Id.)

As a result, on August 27, 2009 Fleurimond commenced the instant action against NYU seeking damages for copyright infringement.  On September 9, 2011, Fleurimond filed a motion for summary judgment and on October 21, 2011, NYU filed a cross-motion for summary judgment dismissing the complaint.

## II.  DISCUSSION

### A. Legal Standard on a Motion for Summary Judgment

It is well-settled that summary judgment under the provisions of Fed. R. Civ. P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" within the meaning of Fed. R. Civ. P. 56 when its resolution "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion."  Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962) (per curiam), and Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989)).  Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)).  However, the nonmoving party cannot survive summary

judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving

party.  Matsushita, 475 U.S. at 586, 106 S. Ct. 1348.  Summary judgment is appropriate when the

moving party can show that "little or no evidence may be found in support of the nonmoving

party's case."  Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223–24 (2d Cir. 1994)

(citations omitted).

A court faced with cross-motions for summary judgment need not "grant judgment as a

matter of law for one side or the other," but "must evaluate each party's motion on its own

merits, taking care in each instance to draw all reasonable inferences against the party whose

motion is under consideration."  Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir.

1993) (quoting Schwabenbauer v. Bd. of Ed., 667 F.2d 305, 313–14 (2d Cir. 1981) (internal

citations omitted)).

## B.  As to the Claim of Copyright Infringement

To prevail on a copyright infringement claim, a plaintiff must prove two elements: (1) the

plaintiff owns a valid copyright, and (2) the defendant copied "constituent elements of the work

that are original."  Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361, 111 S.

Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991); Matthew Bender & Co., Inc. v. West Pub. Co., 158

F.3d 674, 679 (2d Cir. 1998).  In the present case, the second element is not at issue because the

parties do not dispute that the Defendant used and copied the Orion design for its own benefit.

Rather, the central issue in this case is whether Fleurimond or NYU is the true owner of the

Orion copyright.

The Plaintiff argues that she is the rightful owner of the Orion copyright because she

obtained a registration certificate from the United States Copyright Office.  Although the

possession of such a certificate strengthens the Plaintiff's case, it does not resolve the ownership

dispute.  "Possession of a certificate of registration provides its holder with a rebuttable

presumption of ownership of a valid copyright . . . . It also creates a rebuttable presumption that

all facts stated in the certificate are true."  R.F.M.A.S., Inc. v. Mimi So, 619 F. Supp. 2d 39, 52

(S.D.N.Y. 2009) (citations omitted); Whimsicality, Inc. v. Rubie's Costume Co., Inc., 891 F.2d

452, 455 (2d Cir. 1989) ("Possession of a registration certificate creates a rebuttable presumption

that the work in question is copyrightable.").

 While a registration certificate is not dispositive of whether a party owns a valid

copyright, it does shift the burden of proof to the party challenging the validity of the copyright.

Fonar Corp. v. Domenick, 105 F.3d 99, 104 (2d Cir. 1997).  To rebut the presumption that a

plaintiff's copyright is valid, a defendant must show "that the certificates of registration are

somehow invalid or that [the plaintiff] does not in fact own the copyrights."  CJ Products LLC v.

Concord Toys Int'l, Inc., No. 10-CV-5712, 2011 WL 178610, at *3 (E.D.N.Y. Jan 19, 2011)

(citing Hasbro Bradley Inc. v. Sparkle Toys, Inc., 780 F.2d 189, 192 (2d Cir. 1985)); Fonar, 105

F.3d at 104 (holding that the presumption of a valid copyright may be rebutted with evidence

demonstrating that the work at issue is either non-original or non-copyrightable).

 Here, the Defendant contends that the Plaintiff's copyright is invalid because the design

she created falls within the "works made for hire" exception to a copyright's authorship

requirement, which would render any work created by the Plaintiff during the scope of her

employment with NYU the rightful property of the Defendant.

## C.  Whether Orion is a "Work Made For Hire"

 Pursuant to the Copyright Act of 1976, a copyright "vests initially in the author or authors

of the work."  17 U.S.C. § 201(a).  Generally, the author is "the party who actually creates the

work, that is, the person who translates an idea into a fixed, tangible expression entitled to

copyright protection."  Community for Creative Non-Violence v. Reid, 490 U.S. 730, 737, 109

S. Ct. 2166, 2171, 104 L. Ed. 2d 811 (1989); (citing 17 U.S.C. § 102).  However, the Act

provides a crucial exception to this principle within the "works for hire" provision, which

provides that "the employer or other person for whom the work was prepared is considered the

author for purposes of this title, and, unless the parties have expressly agreed otherwise in a

written instrument signed by them, owns all of the rights comprised in the copyright."  17 U.S.C.

§ 201(b).  In this case, there is no written agreement assigning ownership to either party.  Thus,

to prevail on its motion for summary judgment, the Defendant must show that, viewing all the

facts in the light most favorable to the Plaintiff, there is no genuine question of material fact that

Orion is a "work made for hire".  Pavlica v. Behr, 397 F. Supp. 2d 519, 524 (S.D.N.Y.2005) ("In

the absence of an express, written agreement, the rights to a work for hire generally vest in the

employer rather than the employee-author.").  If the Defendant meets this burden, then the

Plaintiff's motion for summary judgment necessarily must be denied.

The Copyright Act defines a work "made for hire" to include a work:  (1) "prepared by

an employee" and (2) "within the scope of his or her employment".  17 U.S.C. § 101.  Although

the statute does not define "employee" or "employment", the Supreme Court in Community for

Creative Non-Violence v. Reid, instructed courts to apply common-law agency principles.  In

Reid, the Court identified a number of agency factors that would be relevant in determining

whether a worker was an employee or an independent contractor ("the Reid factors").  490 U.S.

at 751–52, 109 S. Ct. 2166.  Although it was ultimately not relevant to the Court's analysis in

Reid, the Supreme Court cited with approval the Restatement (Second) Agency § 228 (1958) to

assist in determining whether a particular work created by an employee was within the scope of

employment.  Id. at 740.  Subsequent courts, including the Second Circuit, have applied the

14

Restatement to determine whether a work was created within the scope of an employee's employment under 17 U.S.C. § 101. See, e.g., Shaul v. Cherry Valley-Springfield Cent. School Dist., 363 F.3d 177, 186 (2d Cir. 2004) (applying Restatement (Second) of Agency § 228 (1958) to determine whether a teacher prepared certain teaching materials within the scope of his employment); see also Pavlica, 397 F. Supp. 2d at 524–25; Moonstruck Design, LLC v. Metz, No. 02-CV-4025, 2002 WL 1822927, at *4–*5 (S.D.N.Y. Aug. 7, 2002); accord Avtec Sys., Inc. v. Peiffer, 21 F.3d 568, 571 (4th Cir. 1994); Genzmer v. Public Health Trust of Miami-Date County, 219 F. Supp. 2d 1275, 1280 (S.D. Fla. 2002).

The parties take divergent views on the applicable legal inquiry. The Defendant contends that, because the Plaintiff was indisputably an employee when she created Orion, the Court should apply the scope of employment analysis in the Restatement, and not the Reid factors, to determine whether she created Orion in the scope of her employment. Furthermore, the Defendant contends that, although initially hired as an equipment room aide, there can be no dispute that the Plaintiff was employed as a graphic designer when she created the subject Work. Thus, the requisite analysis should focus on the scope of her employment as a graphic designer, not as an equipment room aide.

The Plaintiff agrees that, "[i]n order to meet its burden of proving that the Work was one 'made for hire,' NYU must establish that the work was prepared by Fleurimond within the scope of her employment at NYU". (Pl.'s Br. at 18.) However, the Plaintiff contends that the proper rubric for making this determination is for the Court to look to the Reid factors to determine whether she was an independent contractor for the purposes of creating Orion. Because the Plaintiff does not address the scope of employment analysis, she does not take a position on whether it should focus on her employment as a graphic designer or an equipment room aide.

Although the Reid factors are relevant to the work-for-hire analysis, the Reid test is primarily used to determine whether a worker is an employee or an independent contractor during the relevant time period, not whether the particular artistic project is within the scope of employment.  Here, it is undisputed that the Plaintiff was an employee of the NYU Athletic Department when she asserts that she created Orion.  Where, as here, an individual is admittedly an employee, the requisite inquiry is not whether the challenged work was performed as an independent contractor, but rather whether it was within the scope of her employment.  Shaul v. Cherry Valley-Springfield Cent. School Dist., 363 F.3d 177, 186 (2d Cir. 2004) (holding that where it is undisputed that the worker was an employee when the subject Work was created "the key issue . . . is whether the materials in question were prepared 'within the scope of employment.'"); Le v. City of Wilmington, 736 F. Supp. 2d 842, 848 (D. Del. 2010), aff'd, 2012 WL 1406462 (3d Cir. April 24, 2012) ("It is undisputed that Le was a City employee during the entire period in which the Work was created. It is further undisputed that there is no written agreement assigning ownership of the Work from the City to Le. Therefore, the only issue is whether Le created the Work within the scope of his employment."); Martin v. City of Indianapolis, 982 F. Supp. 625, 633 (S.D. Ind. 1997) ("There is no dispute between the parties that Martin was an employee of Tarpenning–Lafollette. Therefore, the issue of whether Symphony # 1 was a work made for hire turns on whether the sculpture was created by Martin within the scope of his employment.").

The Court has not found, and the Plaintiff has not provided, any basis for applying the Reid factors.  It is not only undisputed that the Plaintiff was an employee at the time she created the subject Work, but the parties also agree that the proper inquiry is whether the Plaintiff created Orion within the scope of her employment.  Accordingly, the Court agrees with the

16

Defendant that the proper legal inquiry is to apply the scope of employment analysis, not the Reid factors, to determine whether Orion is a work made for hire.

Furthermore, the Court agrees with NYU that the Plaintiff's employment as a graphic designer, not her employment as an equipment room aide should guide the analysis. The Plaintiff admits that she "worked for NYU . . . as a graphic designer . . .", (Pl.'s 56.1 Stmt., ¶ 7), and that "[t]he scope of [her] employment included graphic design . . ." (Joint Pre-Trial Order ¶ 12). Although NYU admittedly did not follow proper procedure in effectuating the change in her duties, it is undisputed that, beginning in March 2007, the Plaintiff accepted $16.00 per hour to perform graphic design work for the NYU Athletic Department, at first in conjunction with her equipment room position, and eventually as her sole basis of employment. (Joint Pre-Trial Order, ¶ 10; Fleurimond Decl., ¶ 11.) In addition, there is no dispute that the Plaintiff was employed as a graphic designer when she was approached by Isa—who was her supervisor for her work in graphic design and not as an equipment room aide—to work on the mascot design project. Thus, the Court agrees with the Defendant that the relevant inquiry is whether the Plaintiff created Orion within the scope of her employment as a graphic designer, not an equipment room aide.

Finally, the fact that the Plaintiff chose not to address the requisite analysis, does not preclude a finding of summary judgment in the Defendant's favor. Not only did the Plaintiff have the opportunity to respond in two separate briefs, but the Plaintiff affirmatively cited cases for the proposition that the Court should determine whether creating Orion was within the scope of her employment, and then inexplicably failed to apply the analysis therein. (See Pl.'s Br. at 18 (citing Shaul and Pavlica).) Nevertheless, there is a significant overlap between the Reid factors and the scope of employment analysis so that the Court discerns no prejudice to the

Case 2:09-cv-03739-ADS-AKT   Document 104   Filed 07/10/12   Page 18 of 37 PageID #: 2160

Plaintiff.  That the Plaintiff chose to make certain admissions that weigh against a work for hire

under the Reid factors, but support a work for hire under the scope of employment analysis, was

her prerogative.

**D.  Whether the Plaintiff Created Orion Within the Scope of Her Employment**

In deciding this question, courts look to whether the work: (1) was the kind of work that

the plaintiff was employed to perform; (2) occurred substantially within the authorized time and

space limits of the job; and (3) was actuated, at least in part by a purpose to serve the employer.

Avtec Sys., Inc. v. Peiffer, 21 F.3d 568, 571 (4th Cir. 1995) (citing Restatement (Second) of

Agency Section § 228).  To prevail on its summary judgment motion, the Defendant must show

that all three elements of this test are met.  City of Newark v. Beasley, 883 F. Supp. 3, 7–8

(D.N.J. 1995); see also Genzmer v. Public Health Trust of Miami-Dade County, 219 F. Supp. 2d

1275, 1280 (S.D.Fla. 2002) ("Courts interpret this test as conjunctive. That is, the party

attempting to establish that the work was made for hire must satisfy all three elements."). 

However, not all three elements are given equal weight.  See, e.g., Avtec Sys., 21 F.3d at 571

("When [the first] element of the Restatement test is met, courts have tended not to grant

employees authorship rights solely on the basis that the work was done at home on off-hours.");

Miller v. CP Chemicals, Inc., 808 F. Supp. 1238, 1244 n. 7 (D.S.C. 1992) ("[W]hen the driving

force behind the creation of the work is directly related to a specific product of the employer and

the employee's job responsibilities, and for the primary benefit of the employer, such work may

be within the scope of employment.").

The Plaintiff defines her graphic design work as being limited to creating seals, signs, and

banners for the University's website, (Pl.'s Rule 56.1 Stmt., ¶ 7) and her work incorporating

Orion or other "proposed designs" into promotional materials or the Branding Book,

(Fleurimond Decl., ¶ 48).  The Plaintiff argues that she created Orion at home, using her own tools while employed in a "non-artistic" capacity; without any input or direction from the Defendant; and without any compensation.  In this regard, the Plaintiff limits her analysis solely to whether the *creation of Orion* was within the scope of her employment.

By contrast, in arguing that the Plaintiff created Orion within the scope of her employment, the Defendant focuses not only on the creation of Orion, but on the Plaintiff's work on the mascot design project as a whole, including:  (1) creating and revising non-Orion trial cats; (2) revising the Orion design at the request of NYU employees; and (3) incorporating Orion and other trial cats into promotional materials and the Branding Book.  In this regard, the Defendant notes that the mascot design project combined the Plaintiff's artistic and graphic design abilities; NYU had substantial control over the project; and the Plaintiff was compensated for her work in the same manner and at the same rate as her other graphic design work.

The Plaintiff does not appear to dispute that there were other aspects to the mascot design project besides the creation of Orion.  In addition, the Plaintiff does not refute the Defendant's evidence with respect to what the other work on the mascot design project entailed or how she was compensated for that work.  Rather, the Plaintiff inexplicably ignores the Defendant's evidence that the mascot design project was within the scope of her employment as a graphic designer, including evidence that she herself considered it within the scope of her graphic design work.  (See, e.g., Fleurimond Dep. at 183 (testifying with regard to "submitting time sheets for graphic design", which she defines as including "shields, seals, banners and the mock-ups for the preliminary versions of trial cat, giant cat, baby cat"); id. at 103 ("According to my time sheets and my recollection fall of 2007 I was working on putting various bodies with the trial cats or making sure that the colors matched up, basic graphic design work.").)  Moreover, although she

19

makes the distinction in her deposition, absent from the Plaintiff's summary judgment submissions is any attempt to distinguish her work on Orion from her work on the mascot design project as a whole.

Contrary, to the Plaintiff's apparent belief, the Court finds that whether the mascot design project as a whole was within the scope of her employment is highly relevant, although not necessarily dispositive, in determining whether the creation of Orion was within the scope of her employment. Thus, to prevail on its motion for summary judgment, the Defendant must show that no reasonable juror could conclude that the mascot design project generally, and the creation of Orion specifically, were not within the scope of the Plaintiff's employment as a graphic designer. As set forth below, the Defendant has met this burden.

### 1. Whether Creating Orion was the "Kind of Work" the Plaintiff was Employed to Perform

With respect to the first factor, generally, "[c]ourts deciding whether an employee's project was the 'kind of work' the employee was hired to perform rely heavily on the employee's job description." City of Newark v. Beasley, 883 F. Supp. 3, 8 (D.N.J. 1995). The only written document reflecting the Plaintiff's employment at NYU concerns her position as an equipment room aide. Although the Plaintiff was also employed as a graphic designer, there is no written description of her responsibilities in that position. Where, as here, the employees responsibilities are not in writing, courts look "to the degree of control that an employer had over the employee's project when determining whether an employee's project was the kind of work he was hired to perform." Moonstruck Design, 2002 WL 1822927, at *5.

After spending three weeks assisting NYU employee Nancy Isa in creating promotional materials for the NYU Athletic Department, Isa asked Fleurimond to assist in creating a new mascot to promote the Athletic Department. As an employee of the Athletic Department,

20

employed to create promotional materials for the Athletic Department, such a request was not wholly unrelated to her job.  See Sterpetti v. E-Brands Acquisition, LLC, No. 04-CV-1843, 2006 WL 1046949, at *5 (M.D. Fla. April 20, 2006 ) ("Although Sterpetti was not hired specifically to work on the pasta program or to create the Manuals, clearly his job requirements changed during the course of his employment with E-Brands such that his job included, if not focused almost entirely on, those tasks. Therefore, the Court finds that Sterpetti was employed to perform the work related to the creation of the Manuals.").

Although the Plaintiff was given certain latitude in executing some of her work on the mascot design project, the Plaintiff admits that, "[w]hen NYU considered one of Fleurimond's designs that it wanted to use, NYU gave instructions to Fleurimond with respect to modifying the design to its liking".  (Pl.'s Br. at 22.)  This included her work on all of the trial cats, including the preliminary versions of Orion.  The Plaintiff's own admission that NYU controlled the mascot design project as a whole, weighs in favor of finding that the mascot design project generally, and the creation of Orion specifically, was the kind of work the Plaintiff was hired to perform.  Cf. Moonstruck Design, 2002 WL 1822927, at *5 (holding that there was an issue of fact precluding summary judgment with respect to whether the employer controlled the employees creation of a piece of jewelry, and therefore whether it was created within the scope of the employee's employment as a jewelry salesperson where the employee claimed "he did not make any changes after he created the design" and the employer failed to provide any evidence that it provided "specific guidance . . or how the design was influenced by it.").

In addition to the Plaintiff's admission, the record also supports the fact that NYU exhibited control over the Plaintiff's revisions to the various trial cats, including her work on Orion.  As to the non-Orion mascot designs, the evidence submitted by NYU shows that

Fleurimond received significant input from NYU employees on what types of cats to draw, how to draw them, and the changes to make.  (See Clarida Decl., Ex. B (email from Isa to Fleurimond dated May 22, 2007 suggesting that Fleurimond find "a way to incorporate the body around the NYU letters (like th[e] bobcat hugging the letters or something????)" and "reworking the letters "NYU" in a different schematic . . . maybe with the torch or maybe just a different configuration with the letter"); id. (email from Fleurimond to Isa dated May 29, 2007 discussing edits to a body for "Angry cat facing forward", where Fleurimond states that she "took a big step away from the typical strut pose that a lot of the mascots have" and then explicitly asks Isa to "Tell [her] what direction [she'd] like to go with that".); Clarida Decl., Ex. B (email from Isa to Fleurimond dated June 25, 2007 requesting four changes to one of the trial cats "by tomorrow morning").)   The Plaintiff did not submit any evidence to contradict the important fact that NYU employees controlled the creation of the non-Orion mascot designs.  Indeed, at her deposition, the Plaintiff testified that she did not claim a copyright to the non-Orion mascot designs because they were done "with complete request of the department in terms of style, in terms of what they desired".  (Fleurimond Dep. at 261–62.)

Significantly, the record also reflects that NYU exhibited control over the Plaintiff's work on Orion.  Although the Plaintiff focuses on the lack of NYU involvement in the creation of Orion, the Plaintiff does not contend to own a copyright on the preliminary versions of Orion. The work at issue in this litigation is not the initial sketch prepared by the Plaintiff, but rather a version of Orion created with the input of NYU employees.  Although there may be a dispute as to the extent of NYU's involvement in the revisions, the Plaintiff does not deny that she made changes to the Orion design between October of 2007 and the final version at the request of NYU.  (See Fleurimond Dep. at 136–38; see also id. at 228 (testifying that changes were made to

22

a preliminary version of the Orion design marked as Defendant's Exhibit 13, and the version of

Orion submitted to the copyright office marked as Defendant's Exhibit 14 between October of

2007 and May of 2008).)  These revisions included, among others: changing the eyes; changing

the color of the face and the tongue; adding bottom middle teeth and making the top teeth larger;

adding a collar; adding a whisker; and deepening the brow bone.  (See Fleurimond Dep. at 153–

59; see also Sicignano Dep. at 149; LeFevre Dep. at 246, 250–51).)  Regardless of whether

"NYU retained and exercised the *sole* power to accept, reject, or modify . . . [Orion]", which the

Plaintiff denies, (see Pl.'s 56.1 Counter Stmt., ¶ 18), the record reflects that the changes were

approved by NYU, and that NYU selected which changes to include in the final design (see

Fleurimond Dep. at 158–59 (testifying that, with respect to the changes between Defendant's

Exhibit 13 and 14 "someone above [her] pay grade was making an approval at NYU"); id. at

157–58 (testifying that she gave LeFevre "numerous variations" of each change to select from).)

Furthermore, the Plaintiff admits that she presented her idea to Isa in May of 2007, and

that it was NYU who requested that she continue working on it.  (See Fleurimond Dep. at 65 ("I

first brought in an idea on paper which I later e-mailed to Nancy and I said this is my idea.  I

think a three-quarter view of this type of cat would look great.  This is my idea and she presented

it to Noah.  She wrote back saying that he liked the ideas, but they eventually distanced

themselves away from it for a while and later on asked me to return to it.").)  Thus, even

crediting the Plaintiff's assertion that she only received "very limited direction and feedback of

NYU employees", (Pl.'s Br. at 21–22), there is no dispute that she made the revisions between

the preliminary and final versions of Orion at NYU's specific behest and that NYU approved the

changes to the design.

The Plaintiff attempts to differentiate her work creating Orion from her graphic design work on the ground that creating Orion required "artistic ability".  (Fleurimond Decl., ¶ 28; Pl.'s Br. at 7; Pl.'s Br. at 21.)  However, although the creation of the preliminary versions of Orion may have involved artistic ability, the mascot design project as a whole combined the Plaintiff's artistic and graphic design skills.  (See Clarida Decl., Ex. A (email from Fleurimond to Isa attaching invoice for "sketches"); Fleurimond Dep. at 103 ("According to my time sheets and my recollection fall of 2007 I was working on putting various bodies with the trial cats or making sure that the colors matched up, basic graphic design work.").  Original sketches that were hand drawn were then converted into a computer program that allowed the Plaintiff to edit the images and to manipulate them for inclusion in promotional materials.  (Fleurimond Dep. at 82; id. at 85 ("After my sketches and the exporting of images, that's technical").)  When the Plaintiff made edits to certain images, she testified that they "were not artistic", but rather were "technical work, graphic design", because they involved "the manipulation of points and manipulation of hexadecimal codes as well as PMS color codes".  (Id. at 83–84; see id at 89 (testifying that her edits to the images "f[e]ll into the category of mostly graphic design or programming" because of the program that she was using.").)

Moreover, even accepting the Plaintiff's contention that graphic design work generally does not involve artistic skill, the fact that "artistic ability" was not a "prerequisite of [her] employment" does not mean it was not the "kind of work" she was employed to perform if the use of her artistic skill on the mascot design project was incidental to her employment as a graphic designer.  Genzmer v. Public Health Trust of Miami-Dade County, 219 F. Supp. 2d 1275, 1280 (S.D.Fla. 2002).  According to Comment b to Restatement (Second) of Agency § 229 (1958), acts incidental to authorized acts may be authorized as within the scope of employment:

24

> An act may be incidental to an authorized act, although considered
> separately it is an entirely different kind of act. To be incidental,
> however, it must be one which is subordinate to or pertinent to an
> act which the servant is employed to perform. It must be within the
> ultimate objective of the principal and an act which it is not
> unlikely that such a servant might do. The fact that a particular
> employer has no reason to expect the particular servant to perform
> the act is not conclusive.

Id.  Here, the mascot design project was "at least incidental to [her] job responsibilities" of

creating promotional materials for the NYU Athletic Department, because it was 'within the

ultimate objective of the principal".  Furthermore, given the overlapping skills required to make

a final mascot design, including Orion, the use of artistic skill in creating a mascot design is "an

act which it is not unlikely that such a servant might do'".  Miller v. CP Chemicals, Inc., 808 F.

Supp. 1238, 1243 (D.S.C. 1992) (citing Restatement Second of Agency § 229 comment b

(1958)); cf. Le v. City of Wilmington, 2012 WL 1406462 (3d Cir. April 24, 2012) ("Le posits

that there are factual disputes regarding whether the Work was created within the scope of his

employment. He argues that it was not within the scope of his employment because his job

description did not list computer programming as the work that he was employed to do. We find

such a narrow position regarding the scope of employment unpersuasive."); Quinn v. City of

Detroit, 988 F. Supp. 1044, 1051 (E.D. Mich. 1997) (designing computer programs was not the

kind of work that a managing attorney for a city's law department was hired to perform where

his job description did not require him to create computer software; his employer never requested

him to develop it; he had no prior programming experience; and the city had its own computer

programming department to do the kind of work the attorney decided on his own to do).

Finally, there is no evidence in the record that the work involved in creating Orion was

outside the scope of the mascot design project.  In her summary judgment submissions, the

Plaintiff does not distinguish between her work on the mascot design project and her work on

Orion generally.  However, at her deposition, the Plaintiff stated that Orion was not the kind of

the work she was employed to do because it was a "personal work" that was "further from what

they were requesting of [her]" insofar as she did not "believe the forward facing cat look[ed]

fierce", and therefore came up with a "different approach to developing the concept" using her

own intuition, skills, model and without "guidance or assistance from any other individual".

(Fleurimond Dep. at 220–21.)

  First, the fact that the Plaintiff chose to create her own design while working on other

trial cats at NYU's direction does not take it outside the scope of her employment.  In fact, as the

Plaintiff's testimony reveals, her vision for Orion grew out of the work that she was doing

admittedly in collaboration with other NYU employees.  Furthermore, even assuming that

creating Orion was "further of what they were requesting of [her]", in terms of originality, the

Plaintiff puts forth no evidence that coming up with the concept or using her artistic skills was

outside the parameters of the mascot design project.  By contrast, the record includes substantial

evidence that the Plaintiff's initial work on the non-Orion mascot designs similarly involved

illustration, (see Clarida Decl., Ex. A (email from Fleurimond to Isa dated April 17, 2007

attaching an invoice for her "sketches" of different versions of a bobcat); Clarida Decl., Ex. B.

(email from Fleurimond to Isa dated May 29, 2007 stating that she had done a "redraw" of a

body for "Angry cat facing forward"); see also Fleurimond De. at 53–54 (referring to "tweaks,

revisions, [and] edits" to trial cats that she invoiced for as "[i]llustration work")), and that there

were other trial cats that she conceptualized and drew "based on their request" that they

"need[ed] something fierce", (see Fleurimond Dep. at 47–48 (defining a "session" that submitted

an invoice for a "drawing based off of their request" and stating "if the request for example was

we need something that is fierce, I would think on what could I come up with that is fierce.  I

would create these drawings and then create them to Nancy or I would do them in her presence
to illustrate to her what my concept was about.").)  Accordingly, even accepting as true that
Orion was a "personal work" that involved the use of the Plaintiff's artistic skill, the Court finds
that a reasonable juror could not conclude that this distinction separates the creation of Orion
from the rest of the mascot design project as the type of work the Plaintiff was employed to
perform.

Based on the record before the Court, viewed in the light most favorable to the Plaintiff,
the Defendant has met its burden of showing that both the mascot design project generally, and
that the creation of Orion specifically, were the kind of work that the Plaintiff was employed to
perform.

### 2. Whether Orion was Created Within Authorized Time and Space Limits

The second factor requires the Defendant to show that the creation of Orion occurred
"substantially within the authorized time and space limits" of the Plaintiff's graphic design job.
Avtec Sys., Inc. v. Peiffer, 21 F.3d 568, 571 (4th Cir. 1994) (quoting Rest. 2d Agency § 228
(1958)).  For the purposes of evaluating this motion, the Court accepts as true the Plaintiff's
claim that she did her work creating Orion exclusively at home, using her own equipment, on her
own time.

Unlike cases where an employee receives a salary and has set work hours, determining
the "authorized time and space limits" is generally not a straightforward exercise.  In this case,
however, the Plaintiff admits that she "performed the majority of graphic design work for NYU
from [her] home computer" and, when she did do graphic design work from the NYU campus, it
was at NYU's request.  (Fleurimond Decl., ¶ 18, 19.)  This was true not only of her work
creating promotional materials, but also of her work on the mascot design project.  (See

Fleurimond Dep. at 76 ("Work on the initial designs of forward facing cat, giant cat were done mostly at home.  Sometimes there was work on forward facing cat in the office, but that is the only design that I worked on at the office".).)  Furthermore, the Plaintiff's compensation for her graphic design work was not tied to where or when she did her work.  (Fleurimond Decl., ¶ 20.)  Thus, while the Plaintiff may have performed some of her graphic design work at the NYU facilities using NYU equipment, she performed a substantial amount of her work from home, using her own equipment.  Based on this evidence, no reasonable juror could conclude that work created at home, using her own equipment, was not within the authorized space limits of the Plaintiff's graphic design job.  Cramer v. Crestar Financial Corp., 67 F.3d 294 (Table), 1995 WL 541707, at *4 (4th Cir. Sept. 13, 1995) ("Cramer admitted that his job required him to work long hours, on weekends, and at home, so he can hardly claim now that work he did at home was by definition not within the scope of his employment.").

The Plaintiff's main argument is that the creation of Orion was outside the scope of her graphic design work because "[u]nlike the graphic design work Fleurimond performed for NYU, Fleurimond never submitted hours to NYU or notified NYU of the quality or quantity of time she spent in creating the Subject Work in order to be compensated hourly for the Work".  (Pl.'s 56.1 Stmt., ¶ 20.)  Generally, when an hourly employee does not receive compensation for work done outside the place of employment, it weighs in favor of finding that the work was not created within the scope of his or her employment.  Miller v. CP Chemicals, Inc., 808 F. Supp. 1238, 1242 n. 2 (D.S.C. 1992).

Although the parties dispute whether the Plaintiff was paid for the creation of Orion, the undisputed evidence in the record establishes that the Plaintiff was compensated for her other work on the mascot design project, regardless of whether it was done at home or at NYU,

including her work creating and revising non-Orion trial cats.  (See Fleurimond Dep. at 183

(testifying with regard to "submitting time sheets for graphic design", which she defines as

including "shields, seals, banners and the mock-ups for the preliminary versions of trial cat, giant

cat, baby cat"); id. at 116 ("When you say bobcat I think you are referring to giant cat, forward

facing cat and the trial cats that were not Orion and if that's the case then yes, I submitted the

hours for those cats and I was paid".); Clarida Decl., Ex. A (email from Fleurimond to Isa dated

April 17, 2007 attaching an invoice reflecting the hours spent sketching "different versions of the

bobcat".); Clarida Decl., Ex. C (invoice submitted by Fleurimond for work spent on promotional

materials and the mascot design project, both billed at $ 16 per hour).).

In addition, this compensation was subject to the same W-2 withholding and tax

treatment as the Plaintiff's other graphic design work.  (Pl.'s Response to Def.'s 56.1 Stmt., ¶ 23

(only disputing that her compensation for the creation of Orion was subject to "full W-2 tax

treatment and withholding").)  In fact, the Plaintiff specifically disclaims ownership over the

non-Orion mascot designs because she came up with them on "their time" and "reported them on

the time sheets accordingly".  (Fleurimond Dep. at 142–43; id. at 176 ("Concerning Orion, and I

don't say that I did not submit hours for certain banners, shields and seals and all the other

designs that you are referring to earlier I do not make any claims toward those designs because I

understand that yes, I did do them on NYU's time and I submitted those hours accordingly.").)

The fact that the Plaintiff was admittedly compensated for these aspects of the mascot

design project in the same manner and at the same rate for work she admits was within the scope

of her employment, weighs in favor of finding that the mascot design project was done within

the authorized space and time limits of her employment.

29

With respect to the creation of Orion, the Plaintiff contends that she was not compensated for her work because she never submitted invoices for her work.  According to the Plaintiff, NYU employees Isa and LeFevre were aware that she was not submitting invoices for her work creating Orion, and informed her that she would receive compensation in the form of royalties if Orion was used by NYU.  The Defendant does not submit any evidence to refute the Plaintiff's claim that she was not compensated in any manner for her work on Orion.  However, the Defendant does dispute that Isa and LeFevre were aware that the Plaintiff was not submitting invoices for her work on Orion, and dispute the existence of any oral agreement regarding her compensation.

Viewing the record in the light most favorable to the Plaintiff, there are genuine issues of material fact with regard to whether she was compensated for her work on Orion, and whether she was entitled to compensation if Orion was chosen as NYU's new mascot.  However, while these issues of fact may preclude summary judgment on a breach of contract claim, where, as here, the other evidence in the case indicates that the subject Work was created as a work for hire, they do not defeat a motion for summary judgment on a copyright infringement claim.  See Sterpetti v. E-Brands Acquisition, LLC, No. 04-CV-1843, 2006 WL 1046949, at *7 (M.D. Fla. April 20, 2006 ) ("The facts demonstrate that Sterpetti agreed to create what amounts to a work for hire, he copyrighted the material to protect his purported right to compensation for creating that work, and his complaint now is that he did not receive the expected compensation. Without commenting on the merits of such a claim, the Court notes that Sterpetti's arguments make his position seem more akin to a breach of contract claim than a copyright infringement claim.").

Moreover, to the extent the parties may have orally agreed to define the Plaintiff's work as one outside the scope of her employment, such an agreement is non-enforceable under the

30

Copyright Act. Although "parties may by agreement memorialized in writing vary the rights which would otherwise be owned by the employer . . . they may not vary such person's status as the 'author' of the work". 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 5.03[D] (2011) ("Nimmer on Copyright"). This distinction was "intentional" because there are legal consequences separate and apart from the ownership of rights that depend on whether a work is made for hire, which could directly impact third parties. Id.; see CCNV v. Reid, 490 U.S. 730, 737, 109 S. Ct. 2166, 104 L. Ed. 2d 811 (1989) ("Classifying a work as 'made for hire' determines not only the initial ownership of its copyright, but also the copyright's duration, [17 U.S.C.] § 302(c), and the owners' renewal rights, [17 U.S.C.] § 304(a), termination rights, [17 U.S.C.] § 203(a), and right to import certain goods bearing the copyright, [17 U.S.C.] § 601(b)(1)"). Thus, if a work is within the scope of employment under the agency analysis, the parties cannot agree—orally or in writing—to define the work as one outside the scope of employment. Nimmer on Copyright § 5.03[D] ("*The parties may not alter this statutory scheme by their own private agreement that the work is not [to] be regarded as one made for hire.*") (emphasis added). Therefore, if the creation of Orion was within the scope of the Plaintiff's employment under the relevant factors, an oral agreement that Orion was to be treated outside the scope of the Plaintiff's employment is not binding and cannot defeat a motion for summary judgment.

Here, the Court finds that the Plaintiff's work on Orion was directly related to her work on the mascot design project. Furthermore, the Plaintiff performed the vast majority of her work on the mascot design project on the Defendant's time, while an employee of the Defendant. See Sterpetti, 2006 WL 1046949, at *6 (holding that the defendant satisfied the second element, despite the fact that the plaintiff-employee spent off-hours time on the Work and argued that

31

there was an agreement for additional compensation, because the plaintiff "perform[ed] a number of tasks directly related to the creation of the [Work] while at work and while on company time" and "all of [the plaintiff's] acts related to the creation of the [Work] were done while employed by [the defendant]"); cf. Avtec Sys., Inc. v. Peiffer, 67 F.3d 293 (Table), 1995 WL 541610, at * (4th Cir. Sept. 13, 1995) (holding that the second element was not met where the employee "created the original version of the Program at home, on his own computer, on his own initiative, without direction, authorization, or compensation from Avtec. He was not salaried, and the Program was not directly related to any specific task he was performing during duty hours."). Here, in contrast to Avtec, the undisputed facts show that the work on Orion occurred substantially within the authorized time and space limits of the Plaintiff's job with NYU. Thus, the Court finds that the Defendant has met its burden on the second element of the scope of employment analysis.

### 3. Whether the Plaintiff was Motivated To Serve NYU's Interest

The third and final factor is whether the Plaintiff's motivation in creating Orion was to serve NYU. The only evidence proffered by the Plaintiff that she created Orion to benefit herself is the alleged oral agreement that she would receive royalties if the Orion design was chosen as the new NYU mascot. However, "the *Restatement* does not require that the servant's only motivation be to help his or her employer; the motivation need only be partial." Genzmer v. Public Health Trust of Miami-Dade County, 219 F. Supp. 2d 1275, 1282 (S.D. Fla. 2002). Even assuming that the Plaintiff created Orion in part based on her personal desire to receive royalties, no reasonable juror could find that she was not motivated in large part to serve the interests of NYU. See Sterpetti, 2006 WL 1046949, at *8 ("The overwhelming weight of the evidence shows that Sterpetti created the Manuals at Tarantello's behest, knowing that they would be used

specifically for Timpano's business, and he has repeatedly specifically acknowledged that he created the Manuals to benefit Timpano's in creating their fresh pasta program. Thus, regardless of any ideas Sterpetti may have held about gaining personal benefit from creating the Manuals (creating at least a partial motivation to serve his own interests), the Court concludes that Sterpetti's creation of the Manuals was, at the very least, appreciably motivated to serve Timpano's business objective of instituting a fresh pasta program.").

First, and most importantly, the Plaintiff does not dispute that she "specifically created the design at the request of NYU, and delivered the design to NYU with the hope and intention that NYU would use it". (Pl.'s Counter 56.1 Stmt., ¶ 31.)  This concession weighs heavily in favor of finding that the Plaintiff's motivation was to serve NYU.  Cramer v. Crestar Fin. Corp., 67 F.3d 294, 1995 WL 541707, at *5 (4th Cir. 1995) (noting that employee's candid concessions that his work served his employer's interest "amply support[ed], indeed compel[led], the conclusion that" the employee was motivated at least in part to serve his employer's interests).

In addition, there is substantial evidence that the Plaintiff's motivation in creating Orion was to serve NYU.  The Plaintiff did not independently decide to create a new mascot for the NYU Athletic Department, but was asked by NYU to help with the creation of a new mascot. The Plaintiff developed Orion while she was working on other trial cats at the direction of NYU. After being presented with a preliminary version of Orion, NYU expressly asked the Plaintiff to continue working on the design.  Between the preliminary version of Orion and the final version, the Plaintiff tailored Orion to meet NYU's needs, making alterations at the request of NYU to make it look "fiercer" and so it would print properly on NYU promotional materials.  (See, e.g., Fleurimond Dep. at 153–59, 244–45.)  Indeed, the Plaintiff copyrighted Orion wearing an "NYU" collar and titled the work "New York University Mascot:  Violet the Bobcat".  The

Court finds that based on these undisputed facts, no reasonable juror could conclude that the Plaintiff was not motivated partially, if not entirely, to serve NYU's interest.

### 4. Weighing the Factors

The Court finds that the Defendant has met its burden of showing that the mascot design project generally, and the creation of Orion specifically, were within the scope of the Plaintiff's employment as a graphic designer.

With respect to the mascot design project generally, the overwhelming weight of the evidence supports the Defendant's contention that it was within the scope of the Plaintiff's employment as a graphic designer. The record clearly establishes that the Plaintiff began working on a new mascot design at the request of NYU and for the benefit of promoting the NYU Athletic Department. Although the mascot design project combined the Plaintiff's artistic ability and graphic design skills, the Plaintiff was compensated in the same manner and at the same rate as she was for her work creating banners, signs and seals.

Indeed, the evidence reflects that the Plaintiff considered and treated her work on the non-Orion aspects of the mascot design project to be within the scope of her employment as a graphic designer. As previously stated, the Plaintiff chose not to directly refute the Defendant's assertion that the mascot design project generally was within the scope of her employment as a graphic designer. It is well-settled that if a party fails to address another party's assertion of fact, a court may "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed— show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3)). Accordingly, even viewing the evidence in the light most favorable to the Plaintiff, the undisputed facts in the record show

that the mascot design project generally was within the scope of the Plaintiff's employment as a graphic designer.

Thus, the relevant question is whether there exists a genuine issue of material fact as to whether the creation of Orion was sufficiently distinct from the other aspects of the mascot design project to fall outside the scope of the Plaintiff's employment.  It is well-settled that to defeat a motion for summary judgment "[t]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful".  D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).  Here, the Plaintiff's attempt to characterize this case as one where an equipment room aide was separately hired to create a new mascot design solely in exchange for royalties is entirely unsupported by the facts.

First, accepting as true that the Plaintiff was not compensated for her work creating Orion, the absence of compensation does not create an issue of fact sufficient to defeat summary judgment where, as here, "the driving force behind the creation of the work is directly related to a specific product of the employer and the employee's job responsibilities, and for the primary benefit of the employer".  Miller v. CP Chemicals, Inc., 808 F. Supp. 1238, 1244 n.7 (D.S.C. 1992).  The undisputed evidence shows that the creation of Orion, although done at home and allegedly without compensation, was admittedly done "at the request of NYU" and was part of the mascot design project that the Plaintiff was working on during "[NYU's] time".  Other than the alleged oral agreement as to compensation and potentially the level of originality—neither of which create an genuine issue of material fact sufficient to defeat the instant motion—the Plaintiff does not submit any evidence distinguishing the creation of Orion from the rest of her work on the mascot design project.

Furthermore, the record clearly establishes that NYU controlled the Plaintiff's work on the mascot design project, including whether to continue working on Orion.  Although the issue of fact with respect to precisely how much involvement NYU had in creating the final Orion design weighs in favor of the Plaintiff, there is no genuine dispute on this record that the Plaintiff made revisions to the Orion design at NYU's request to conform to NYU's aesthetic and technical requirements.  Based on the record before the Court, no reasonable juror could conclude that the creation of Orion was outside the scope of the Plaintiff's employment.

Thus, the Defendant has met its burden of showing that Orion is a "work made for hire" under the Copyright Act, and therefore that the Defendant is properly considered the "author" of Orion.  In the absence of a written agreement to the contrary, the Defendant holds the copyright in the Orion design.  "Although section 201 may sometimes create harsh results, it clearly places the burden on the employee to obtain a written agreement, and not merely an oral understanding, that the employee will retain the copyright interests in the works he creates while within the scope of his employment."  Miller, 808 F. Supp. at 1245.

Accordingly, the Court finds that there is no material factual issue warranting trial with respect to the work for hire defense.  Therefore, the Defendant's motion for summary judgment dismissing the Plaintiff's copyright infringement claims is granted.  In addition, on the same factual and legal findings and conclusions, the Plaintiff's cross-motion for summary judgment is denied.  See Le v. City of Wilmington, 2012 WL 1406462, at *4 (3d Cir. April 24, 2012) (affirming summary judgment in favor of defendant-employer on the plaintiff-employee's copyright claim on the ground that the plaintiff created the Work—a computer program—within the scope of his employment where, despite the fact that the plaintiff argued that "that he created the Work exclusively during his personal time outside of the office and that development of the

36

source code was not within his job description", the undisputed facts showed that: he developed the Work for the purpose of helping his employer manage its business more effectively; in creating the Work, he used the employer's resources, including feedback from his employer, and reused and modified code from other files he had created for his employer; and, between the initial version of the Work and the copyright registration, the Work was subject to testing and modifications by his employer); see also McKenna v. Lee, 318 F. Supp. 2d 296, 301 (E.D.N.C. 2002) (granting summary judgment to the defendant-employer on the grounds that the totality of the circumstances supported that the design at issue was a work for hire where the plaintiff's duties included printing license plates and design work at the request of his employer and the plaintiff created a license plate design in response to employer's request, in the course of his employment, and with the purpose to serve his employer).

### III.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Defendant's motion for summary judgment dismissing all claims against it and the complaint is GRANTED; and it is further

**ORDERED** that the Plaintiff's motion for summary judgment is DENIED; and it is further

**ORDERED** that the Clerk of the Court is directed to mark this case as closed.

**SO ORDERED.**

Dated: Central Islip, New York
July 10, 2012

     /s/ Arthur D. Spatt
      ARTHUR D. SPATT
United States District Judge